JENKINS *v.* McQUAID.*

(Division B. Dec. 3, 1928. Suggestion of Error Overruled March 18, 1929.)

[120 So. 814. No. 27333.]

186

*Corpus Juris-Cyc References: Easements, 19CJ, section 1, p. 863, n. 11; section 18, p. 874, n. 81; section 59, p. 892, n. 22; Frauds, Statute of, 27CJ, section 131, p. 193, n. 85; Highways, 29CJ, section 3, p. 371, n. 86. On sufficiency of parol grant to create easement, see 9 R. C. L. 746; 2 R. C. L. Supp. 867; 4 R. C. L. Supp. 624; 5 R. C. L. Supp. 528.

*Teat & Cox*, for appellant.

*Alexander & Alexander,* for appellee.

Argued orally by *J. A. Teat,* for appellant, and *Julian P. Alexander,* for appellee.

ETHRIDGE, P. J. This is an appeal from a decree of the chancery court of Hinds county confirming Edward F. McQuaid's title to a strip of land fifteen feet wide lying immediately west of lot 4 of the McQuaid-Fitzgerald subdivision in the city of Jackson, Mississippi, sold to appellant, H. B. Jenkins, by the father of Edward F. McQuaid (E. A. McQuaid and Fitzgerald were joint owners of the said land). The sale to Jenkins was made in the year 1905, and the fifteen-foot alley, or strip of land here involved, was not embraced in the deed from McQuaid and Fitzgerald to Jenkins; but it is the contention of Jenkins that there was a map showing the strip of land to be an alley; that he bought with reference to the said plat; and that McQuaid in making the sale to him, represented to him that he (Jenkins) would have the use of said strip of land, or alley, as a means of ingress and egress to the lot purchased by him (which lot he purchased for erecting a laundry thereon). Edward F. McQuaid, claimed by descent from E. A. McQuaid, his father, in a partition proceeding of the estate of E. A. McQuaid to his heirs, in 1909, and deraigned title from the government to himself through a series of named conveyances; setting up that he was the owner in fee of the fifteen-foot strip of land between certain lots owned by him and awarded to him in the partition

proceedings, and the lot sold by his father and Fitzgerald to Jenkins, and alleging that Jenkins was using the alley without right thereto and in derogation of the complainant's (E. F. McQuaid's) title, and praying for a decree confirming the title thereto and for rental for the use of said land.

Jenkins answered the bill, setting up at length in his answer that when he bought the lot from McQuaid and Fitzgerald upon which his laundry is situated, the owners then and there represented to the defendant that the said alley was open to the use of the lot then and there purchased from them by Jenkins for the purpose of building a laundry thereon, and that it was convenient and necessary to use said alley for egress and ingress to the east end of said lot; that the consideration paid for the said land was likewise a consideration for the enjoyment and use of said alley in connection therewith, and that the value of same to the proper use and enjoyment of the said lot was taken into account and considered an inducement, and was the moving cause for the purchase of the said lot; that he had used, repaired, and maintained the said alley as a means of egress and ingress to his laundry continuously for a period of more than twenty years, and that the said grantors ratified his use of the said alley as a matter of right during the period of their natural lives, and that their successors in title had likewise at all times acquiesced, as a matter of right, in his use of said alley without objection, until the day and date of the filing of said bill of complaint; that his use of the alley for egress and ingress to his lot had been open, hostile, continuous, and notorious, and as a matter of right, during all of said period of time. The answer further alleges that McQuaid and his predecessors in title approved certain maps, plats, or drawings of the McQuaid-Fitzgerald subdivision to the city of Jackson, which showed said alley as an ingress and egress to the lot purchased by Jenkins, and that—the said parties "ob-

tained the benefit of enhanced value which the said street gave to and afforded their adjoining property (which has likewise been purchased by defendant by mesne conveyances from the heirs of said parties); that said alley has remained open and continuously traveled by the defendant as aforesaid and by the public at large for said years and all of said conveyances of said property, described as Lots 1, 2, and 3, McQuaid-Fitzgerald Subdivision, were described and conveyed with reference to said plat showing and holding out said fifteen feet of ground as an alley or means of egress and into said property, on the east side thereof.''

The answer then denies the allegations of the bill with reference to the complainant's fee-simple title to the alley, in the following language:

''Defendant more specifically denies that complainant has a fee-simple title to said fifteen-foot alley and that he has acquired or owned or ever clothed himself with the muniments of title to said property, or has even been held out and recognized as the owner of said alley; that the said alley is a valuable asset only as such to adjacent property of the said complainant. That this defendant now has. holds and claims an easement in and to, over and across said alley for ingress and egress to his property. and denies that the complainant or his predecessors in title have, at any time, prior to this suit asserted to him any right in and to the alley and denies that his use thereof casts any cloud upon the title of the said property of the complainant and denies that he is indebted in any sum to the complainant for the use of the said alley aforesaid.''

The plaintiff testified orally, without objection, that he owned the fifteen-foot alley, or strip of land, above mentioned, and that he had obtained it in a partition proceeding partiting the estate of his father among his heirs, but he did not introduce in evidence the decree in the said cause, or the record in the said partition proceeding

at law, but depended upon his testimony and that of his mother stating that he was the owner of the said property and that he derived it through that decree of the court. The defendant, Jenkins, testified, in support of his answer, that when he was negotiating for and purchased his lot upon which his laundry is located, McQuaid had a blueprint, or other drawing, showing the said strip of land as an alley, fifteen feet wide, leading to Amite street on the south from said lot, and that it was represented to him that he would have the right to use said alley for the purpose of ingress and egress; that he claimed no right other than to use the alley as a passageway from and to his lot, and that that he had used it continuously, openly, and as a matter of right, from 1905 up to the date of the trial of the cause; and he is supported in this by the testimony of Fitzgerald—that there was such a blueprint, or drawing, exhibited at the time of the sale to Jenkins, that showed the said alley,—but Fitzgerald's recollection as to that was not clear and definite; that when the deal was closed, Fitzgerald and his wife came over to Jackson, Mississippi, from Vicksburg, to sign, and signed, the deed to Jenkins, since which time he (Jenkins) had continuously, openly, and notoriously used the strip of land, as claimed; that after the death of E. A. McQuaid, the McQuaid family moved and had remained away until the filing of the suit, a period of more than twenty years.

It appears that some part of this time Jenkins had rented, or paid rent on, one of the lots east of the alley, and used the buildings thereon for stables, but subsequently he began the use of automobiles in connection with his laundry, and, having no further need for the lot or the houses thereon, discontinued renting same; that demand for rent, however, was made upon Jenkins, by some real estate agents in Jackson, one of whom made a survey of the premises, and found that some of Jenkin's buildings encroached a few feet upon the alley.

The testimony of Jenkins that he constantly used this alley, and claimed the right so to do, is undisputed. It is true that the complainant was not in the city of Jackson, and may not have been actually cognizant of that fact.

The chancellor held that the use made by Jenkins of the alley "was not sufficient notice to complainant of the defendant's hostile claim, if any, to said land, and that said use has therefore continued as permissive and has not ripened title in this defendant." A continuous easement is an interest in land, and a parol grant is insufficient to pass the title under the Statute of Frauds (Hemingway's Code 1927, section 3325), but it is sufficient when claimed as a right and used continuously, openly, and for a period of ten years or more, and is sufficient to ripen into a right by prescription equivalent to a deed conveying such right. Adverse and continuous enjoyment of a right of way for a term of years equal to the statute of limitation raises a legal presumption that the right was properly acquired. *Lanier* v. *Booth*, 50 Miss. 410; *Briel* v. *Natchez*, 48 Miss. 423; *Alcorn* v. *Sadler*, 71 Miss. 634, 14 So. 444, 42 Am. St. Rep. 484; *Board of Trustees of University of Mississippi* v. *Gotten*, 119 Miss. 246, 80 So. 522. In the case of *Board of Trustees of University of Mississippi* v. *Gotten, supra*, it was held that, although an easement cannot be maintained by the public by adverse use unless the public, as such, has exercised the right in the regular way, through the lawfully constituted authority, yet an individual may acquire an easement of way by adverse user though at the same time the public uses the way. It is therefore not necessary for the use of the alley by Jenkins to have been exclusive of all other persons; others, also, may have used it as a means of ingress and egress to their property. If Jenkins, under a claim of right, used the alley constantly for the statutory period, improving and keeping it in condition for his use, as testified by him (which testimony is not disputed), then his right thereto

became perfect and irrevocable after such statutory period of time, and is as efficacious in vesting in him the enjoyment of such right as though it had been formally conveyed in writing. It is not necessary, in view of the conclusion reached upon this proposition, to decide whether it was competent for the complainant to make out his chain of title in a confirmation proceeding without producing the instruments of title or account for their loss or destruction, or whether, in the absence of objection, the proof of ownership verbally would suffice.

The judgment of the court below will be reversed and judgment rendered here establishing Jenkins' right of user of the said alley as a passageway of ingress and egress to his property.

*Reversed, and judgment here for appellant.*

### On Suggestion of Error.

Anderson, J. Appellant, in his bill, sought to have his title established and confirmed to lot 4 described in the bill, as well as to a fifteen-foot strip of land described in the bill and often referred to in the evidence as "an alley." The chancellor granted the prayer of the bill, both as to the fifteen-foot alley and the lot. The appellant did not contest the appellee's claim of title to the lot. The fifteen-foot alley, alone, was the subject-matter of the litigation.

The appellee contended that he was the owner in fee of the alley, and the appellant had no rights whatsoever therein, while the appellant contended that he had an easement for ingress and egress in the alley to and from his property, but did not contend that such easement was an exclusive one. He conceded that the appellee also had the free use of the alley as a passageway. The evidence showed that the appellant had put some obstructions in the alley, which were calculated to interfere with appellee's use of it as a passageway.

In the opinion handed down, that fact, as well as the fact that the appellee's claim of title to lot 4, was not contested by the appellant, were overlooked because they were matters about which there was no real contest between the parties. The decree of the chancellor was reversed. The result was to leave the appellee's title to lot 4 unconfirmed, and the structures put in the alley by the appellant to remain.

On a reconsideration of the cause, on a suggestion of error, we are of the opinion that the judgment heretofore entered reversing the decree of the chancellor should be modified to the extent that such decree be affirmed as to lot 4, and that the judgment be further modified to the extent that the appellant is mandatorily enjoined to remove the structures in the alley within sixty days from the date final judgment is entered in the cause in this court. To that extent, the appellee's suggestion of error is sustained. In all other respects, it is overruled. Costs of appeal will go against appellee.

*Sustained in part, and overruled in part.*