Eastlawn Development Company, a corporation, (and others) appeal from a decree of the Chancery Court of Jackson County entered in a suit brought by Wiley Wells, under the terms of which the court held that Eastlawn had acquired only an undivided one-fourth interest in a forty acre tract, which was the subject matter of the suit, the remaining three-fourths undivided interest being owned by complainant-appellee, Wiley Wells.
In his suit Wiley Wells made Eastlawn (and others in privity with Eastlawn) defendants. But in its brief on appeal Eastlawn asserts that "only Eastlawn Development Company, a corporation, and Dan Stallworth (who claims through Eastlawn) have any title to or interest in" the forty acres.
In his bill, Wiley Wells alleged (in substance), that he was the owner of the land, that Eastlawn, and the other defendants, had entered upon it and were attempting to assert a false claim of ownership. Complainant prayed, among other things, that the court hold that he was vested with "good, valid fee simple title" to the land and that the court "cancel, set aside and hold for naught all of the pretended claims" of Eastlawn and the other defendants. Also included was a prayer for "such other, further, and general relief as he may be entitled to in equity."
The subject land had been patented by the United States Government to Moses Wells on December 17, 1894. Moses Wells died intestate many years ago, his wife having predeceased him, leaving as his heirs at law four children, Quitman Wells, Margaret Wells, Mary Wells Bilbo and Julia Wells Fairley. Wiley Wells, appellee, is a child of Quitman Wells, who died intestate, without having parted with title to his one-fourth undivided interest. Margaret Wells, (through whom Eastlawn must claim), died intestate without ever having married but leaving as her heirs at law certain children. Mary Wells Bilbo, Julia Wells Fairley and Quitman Wells also died intestate without ever having transferred or conveyed any interest inherited by them in the land.
In his bill, Wiley Wells specifically attacked certain proceedings in the Chancery Court of Jackson County in Cause Number 17,866, (through which Eastlawn claimed), and charged that such proceedings had been fraudulent and were void. These proceedings had been brought on July 29, 1964 "by persons styling themselves as the heirs at law of Margaret Wells." Copies of the pleadings, proceedings and decrees in Cause No. 17,866 were introduced into evidence.
It appears that, in the suit referred to, the "heirs of Margaret Wells" had alleged that the land had been orally given to her by Moses Wells, and had claimed to be the sole owners of the land. In these proceedings, a sale of the land and a division of the proceeds among the "heirs of Margaret Wells" had been procured. Neither Wiley Wells nor the heirs of the other children of Moses Wells had been made parties and the funds derived from the sale had been distributed exclusively to the "heirs of Margaret Wells."
Eastlawn's answer, which was joined in by several other defendants, contained a general denial of the allegations of the bill and an assertion that the partition proceedings and the resulting sale of the land referred to above, were valid and that the title acquired by the purchaser (a predecessor in title to Eastlawn) at the sale was to the complete fee.
During the pendency of the present suit, Wiley Wells obtained quitclaim deeds from a number of defendants, and decree pro confesso was taken against all non-answering defendants. The case then went to *Page 336 
trial upon the issues raised by the bill and answer. The chancellor, after a lengthy evidentiary hearing, during the course of which he heard a great deal of testimony, delivered an opinion in which he set forth his findings. As no clearer exposition of the case as made by the evidence could be given we adopt his opinion, which is as follows:
 It is the finding of the Court that the property in question was patented by the United States of America along with other lands to Moses Wells on May 23, 1888. That it was rural land in the northern part of Jackson County undeveloped at the time. That Moses Wells was married once and died about 65 years ago intestate and that his wife predeceased him. That Moses Wells had four children, namely, Quitman Wells, Margaret Wells, Mary Wells Bilbo, and Julia Wells Fairley.
 That the property was never divided between these children. And as rural colored people usually do, they merely referred to the property as heir property and many of the children moved away and that the complainant in this case, who is a son of Quitman Wells, lived on the forty acres of land immediately east of the parcel in question here. And that he periodically farmed the property that he was on and that he had at various times some type of fence or some type of activity on about 18 acres of the property here in question, but the Court finds that he was without color of title, and was merely using the property with consent of some and not adversely to any of the heirs of Moses Wells.
 That in the year 1964 there was a partition suit filed in the Chancery Court of Jackson County, Cause No. 17,866 wherein the alleged heirs of Margaret Wells claimed the forty acres of land in question in this suit, claiming that the property had been given to Margaret Wells in her life time and that they were the heirs of Margaret Wells and claimed to be the owners of the property. And said suit resulted in the sale of the land for partition among the heirs of Margaret Wells. In that suit no notice or summons was given to any of the other heirs of Moses Wells, and the property was ordered sold by a commissioner of the court and the proceeds distributed to the heirs of Margaret Wells.
 That the complainant in the present suit, namely Wiley Wells, was present at the partition sale and entered a bid through his son for the purchase of the land but was not the highest bidder and the property in that suit was sold to Viola Strahan. Thereafter on May 28, 1965, by deed recorded in Book 274, page 135, Viola Strahan conveyed the property to Viola Strahan, Arnold Ross Strahan, and Orvis Strahan as tenants in common. By deed recorded in Book 284, Page 169 of the Deed Records Viola Strahan conveyed a part of the land to Dan Stallworth and then by deed dated October 10, 1965, conveyed the land to Eastlawn Development Company who thereafter on January 31, 1969, filed a plat of the property as a subdivision known as Three Rivers Estates and that Company conveyed Lots 22 and 23 to Amzie Smith and Lillie V. Smith.
 With the record title in this situation the present suit is filed by Wiley Wells an old man 87 years of age and he makes as parties defendant to the suit all of the heirs of Moses Wells and claims that he owns a part of the land because of inheritance and full fee simple title because of adverse possession against the heirs of Moses Wells.
 The first legal question presented by the pleadings and by argument of counsel is the validity of the partition pleadings, contending Margaret Wells was not married and the people in that suit were merely interlopers. The Court finds from the evidence however, that Margaret Wells did have these children and that those persons in that suit were *Page 337 
the heirs of Margaret Wells who had survived her father Moses Wells and those heirs owned a one-fourth undivided interest in the property in question here.
 The claim of the heirs of Margaret Wells as to the entire fee simple title is based on an alleged inter vivos gift to Margaret Wells of this particular forty acres of land, it being the contention that Moses Wells had given her this forty and given the other children other lands. Unfortunately however proof shows that Margaret Wells never occupied this forty acres of land nor did any of her children, so that the Court must hold as a matter of law that an inter vivos gift unsupported by subsequent occupany [sic] of ten years is insufficient to vest title.
 The next question presented is the question of equitable estoppal [sic] as against Wiley Wells, the complainant herein, as to the purchaser at the commissioner's sale for partition, and her successors in title. The testimony of Mr. Moss and others is that he represented the complainants in the partition suit and that he inquired of Wiley Wells if he had an interest in the land and was told by Wiley Wells he had no interest but that his son was farming part of the land. Wiley Wells contends that he only said it was heir property. The son, Edward Wells, was made a party to the partition suit was [sic] Wiley was not. Wiley Wells then appeared at the sale and he and his son together bid on the property and did not succeed in the purchase and he then stood by from 1965 until 1969 before he did anything and permitted the purchasers to expend money and pay taxes on the land until the filing of this suit in 1972, when he says they began to tear down his fence to develope [sic] their subdivision.
 It is my conclusion that Wiley Wells was not estopped to deny the title of the purchasers at the commissioner's sale. He contends he was an heir to part of the property. He had a right to bid at the sale. His bidding was not inconsistent with the claim to being an heir to the property. However after the sale he is estopped from claiming any damages for acts of the purchasers when he stood idly by and let them expend money and effort on the property for a period of four years. In fact while damages were claimed in the declaration there was no proof offered for any damages pressed or proven in the trial of the case.
 Wiley Wells has now by quitclaim deed and decree pro-confesso in this suit obtained the title of all of the other heirs except those of Margaret Wells.
 The Court is of the opinion that all of the heirs of Margaret Wells were included in the partition suit or were either parties complainant or defendant to the suit, and decree was entered in that suit back in 1965, so that, whatever interest those heirs of Margaret Wells had, passed through the partition suit to the purchaser at the commissioner's sale.
 Wiley Wells in his suit contends that he is entitled to confirmation of his title to all of the land by adverse possession. This contention however must be denied. The testimony is that the land was rural land in Northern Jackson County with some scrub timber on it, was part of the open range and that he from time to time had a fence on some parts and then moved the fence around on other parts and therefore it is impossible from the testimony to say he actually occupied under fence any portion of the land continuously for more than ten years. And even if he had occupied this portion he could not claim the whole forty when he had no color of title.
 [5] Also his title by adverse possession fails for the reason that all of these heirs of Moses Wells were his co-tenants and he could not establish adverse possession against his co-tenants unless *Page 338 
there be a legal ouster. That is such notice to his co-tenants clearly that he was claiming the land adversely to them. The testimony, even by Wiley Wells, is that he considered it heir property and he mentioned it to Cora and she told him he could go ahead and farm it and that none of the heirs were told that he was claiming it as his own.
 It is the conclusion of the Court, from the testimony and the law, that this forty acres of land was the property of Moses Wells and descended in four equal parts to his children of whom Margaret was one. And that the heirs of Margaret owned a one-fourth undivided interest in the land and this one-fourth undivided interest passed through the partition sale down to the purchaser at the commissioner's sale and her successors in title.
 The remaining three-fourths undivided interest in the land belonged to the heirs of the other three children of Moses Wells and remained their property until precluded by the decree pro-confesso in the present suit together with any quitclaim deeds Wiley has obtained.
 Therefore the decree should be that the title of Wiley Wells should be confirmed to an undivided three-fourths interest in the land and the other one-fourth interest to be the property of the purchaser at the commissioner's sale and her successors in title. That any question of owelty as between Wiley Wells and the remaining one-fourth interest in the land for taxes paid since the purchase at the commissioner's sale would be reserved in any future suit for partition as between Wiley Wells and the owners of the remaining one-fourth interest.
There was no demurrer to the bill although appellants are now critical of its form and argue that it meets statutory requirements neither as a bill to confirm title nor as a bill to cancel clouds on title. Appellee takes the opposite view and contends, among other things, that it is also proper as a "bill of review," attacking the decree in the former suit, wherein the heirs of Margaret Wells falsely alleged that they were the owners of the complete fee and procured a sale and divided the proceeds. Without entering into a discussion of the technical features of the bill, we have concluded that its allegations and prayer were sufficient to support the decree appealed from. Eastlawn's title can be no greater than that of its predecessors in title, the heirs of Margaret Wells. As to that interest, the sale was effective since it was procured by and acquiesced in by her heirs, who divided the money among them. Under such circumstances neither they nor the successors in title to the purchaser at the sale are in a position to complain, as against Wiley Wells, who was not a party, that the assertion of complete ownership in their bill was false. The evidence leaves it beyond question that Wiley Wells does own an interest in the land and thus had standing to maintain the suit against Eastlawn and its privies. We are not called upon in this case to decide whether Wiley Wells has acquired the entire three-fourths interest which descended from Moses Wells to Quitman Wells, Mary Wells Bilbo and Julia Wells Fairley, his other three children. In any event, no part of it belongs to Eastlawn and Eastlawn has no interest in it. Eastlawn is limited to the one-fourth interest which descended to Margaret Wells and which was sold to Eastlawn's predecessor in title through the Chancery proceedings brought by her heirs.
The findings of the chancellor are sufficiently supported by the evidence and we cannot say that he was manifestly wrong.
Affirmed.
GILLESPIE, C.J., RODGERS, P.J., and INZER, ROBERTSON, SUGG and WALKER, JJ., concur. *Page 339