# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 98-CA-00494 COA

**GREGORY A. SHARP AND WIFE, VICKIE LYNN SHARP**    APPELLANTS

**v.**

**SHIRLEY DOUGLAS WHITE**    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/08/1997 |
| TRIAL JUDGE: | HON. ROBERT L. LANCASTER |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | GEORGE C. MCKEE |
| ATTORNEY FOR APPELLEE: | BEN F. HILBUN JR. |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| TRIAL COURT DISPOSITION: | APPELLEE WAS AWARDED A PRESCRIPTIVE EASEMENT AND DAMAGES OF $2,450. |
| DISPOSITION: | AFFIRMED - 12/30/98 |
| MOTION FOR REHEARING FILED: | 1/13/99 |
| CERTIORARI FILED: | 4/20/99 |
| MANDATE ISSUED: | |

BEFORE THOMAS, P.J., COLEMAN, AND HINKEBEIN, JJ.

HINKEBEIN, J., FOR THE COURT:

¶1. Dissatisfied with the Oktibbeha County Chancery Court's decision finding appellee Shirley Douglas White to hold a prescriptive easement across their property, Gregory Sharp and his wife, Vicki Sharp, assign the following points of error to the chancellor's decision:

**I. THE CHANCERY COURT OF OKTIBBEHA COUNTY MANIFESTLY ERRED BY HOLDING THAT THE PLAINTIFF HAD A PRESCRIPTIVE EASEMENT WHICH WAS DOMINANT ACROSS THE DEFENDANT'S LAND?**

**II. WHERE THE EVIDENCE SHOWED THAT ALL PRIOR ACCESS BETWEEN THE PARTIES' PREDECESSORS IN TITLE WAS PERMISSIVE AND THE PREDECESSORS WERE RELATED BY MARRIAGE, THE COURT MANIFESTLY ERRED IN HOLDING THAT THERE WAS A PRESUMPTION THAT ACCESS WAS UNDER CLAIM OF RIGHT AND REQUIRING THE DEFENDANT TO REBUT SAID PRESUMPTION.**

¶2. Holding these assignments of error to be without merit, we affirm the judgment of the chancery court.

## FACTS

¶3. This case illustrates how the "handshake agreement" of a generation past can easily become the litigation of today. In or about 1962, the late Leon Douglas purchased a tract of land in the East Half of the Southeast Quarter of Section 10, Township 19, Range 12 in Oktibbeha County, Mississippi. Adjoining the Douglas property was a tract of land owned by the late J. B. Tenhet in the West Half of the Southwest Quarter of Section 11, Township 19, Range 12. The record reflects that Leon Douglas and J. B. Tenhet were cousins, friends, and may have occasionally assisted each other in their respective farming operations. In order to access some of his farmland, Douglas and his hired hands would have to navigate a creek, which often resulted in a stranded tractor. The creek was also the source of flooding on the Tenhet property. Shortly after Douglas's purchase of the land, Tenhet presented a proposal. The gist of the deal was that the men would construct a gravel road across Tenhet's property that would give Douglas easy access to his farmland. They would also build a levee to limit the flooding from the creek. According to the testimony of Willie Cooper, who worked for Douglas at the time, these projects were accomplished in two weeks using trucks, plows and other equipment belonging to both landowners. Cooper also testified that he and Douglas would regularly use the road and were not required to ask Tenhet's permission. Both Tenhet and Douglas took responsibility for maintaining the newly constructed road. The agreement, while never put in writing, existed for approximately thirty years without incident and beyond the deaths of both Leon Douglas and J.B. Tenhet.

¶4. After Leon Douglas's death, his property passed to his widow Shirley Douglas White, who is the appellee in the case *sub judice*. After J. B. Tenhet's death, his property was sold to the appellants, Gregory Sharp and his wife Vickie. The 1992 sale was made on behalf of the estate of J. B. Tenhet by his son, Richard Tenhet, and his wife, Geraldine, who is also a realtor. Both Richard and Geraldine testified that prior to the sale they informed the Sharps that the gravel road was access to Mrs. White's property and that Gregory Sharp had informed them that it would not be a problem. Geraldine testified that she understood Mrs. White's access to be a prescriptive easement. Gregory Sharp testified that he understood Mrs. White's access to be a permissive use, which he allowed her and the farmers who leased her property to exercise up until 1995.

¶5. In 1995, Gregory notified Mrs. White that he was going to cut off her access to the road and that she would have to rely on another legal easement which had not been used for years. Gregory and Mrs. White eventually entered into a lease, which allowed her to use the road for the 1996 farming season in exchange for nominal consideration. After that lease expired on December 31, 1996, Gregory again informed Mrs. White he would not give her access to farm her land for the coming growing season. The record reveals that Gregory offered to renew the lease if Mrs. White agreed to a series of proposals which involved him being

able to purchase her property upon her death. Since Mrs. White wished for her son to inherit the property, she declined Gregory's proposals. As the result of Gregory's refusal to allow her to use the road, Mrs. White was unable to rent forty-nine acres of her farmland for the 1997 farm season. The record reveals that Mrs. White was to have received $50 per acre in rental for the land in question, for a total of $2450. On February 14, 1997, Mrs. White filed a complaint against Gregory in which she requested the court to confirm her right to use the road subject to an existing prescriptive easement. The chancellor heard testimony in the case on September 25, 1997, and issued a memorandum opinion on November, 18, 1997. The chancellor found that since Leon Douglas had helped construct the road across J. B. Tenhet's land, Douglas's use of the road was under a claim of right and not a permissive or gratuitous use. As such, the chancellor found that Leon Douglas had openly and continuously used the road far in excess of the ten years required to vest an easement by prescription. In an order dated December 8, 1997, the chancellor stated that Mrs. White had a valid easement and ordered the Sharps to pay damages of $2450 plus all court costs. Upon denial of their motion for a new trial, the Sharps perfected their appeal before this court.

## DISCUSSION

**I. THE CHANCERY COURT OF OKTIBBEHA COUNTY MANIFESTLY ERRED BY HOLDING THAT THE PLAINTIFF HAD A PRESCRIPTIVE EASEMENT WHICH WAS DOMINANT ACROSS THE DEFENDANT'S LAND?**

**II. WHERE THE EVIDENCE SHOWED THAT ALL PRIOR ACCESS BETWEEN THE PARTIES' PREDECESSORS IN TITLE WAS PERMISSIVE AND THE PREDECESSORS WERE RELATED BY MARRIAGE, THE COURT MANIFESTLY ERRED IN HOLDING THAT THERE WAS A PRESUMPTION THAT ACCESS WAS UNDER CLAIM OF RIGHT AND REQUIRING THE DEFENDANT TO REBUT SAID PRESUMPTION.**

¶6. The two assignments of error offered by the Sharps essentially deal with the same concerns and, accordingly, will be addressed together. The Sharps argue that the chancellor erred in finding that a prescriptive easement existed, when the facts equally supported a finding of a permissive use that was subject to revocation at any time. White counters that the chancellor's opinion is consistent with facts and testimony supporting a prescriptive easement.

¶7. This Court always reviews a chancellor's findings of fact, but we do not disturb the factual findings of a chancellor unless such findings are manifestly wrong or clearly erroneous. *Bowers Window and Door Co., Inc. v. Dearman*, 549 So.2d 1309 (Miss.1989). This standard has also been explained as follows: Whenever there is substantial evidence in the record to support the chancellor's findings of fact, those findings must be affirmed here. *Johnson v. Hinds County*, 524 So.2d 947, 956 (Miss.1988); *Culbreath v. Johnson*, 427 So.2d 705, 707-08 (Miss.1983). If a chancellor fails to make findings on issues of fact, this Court assumes that the issues were resolved in favor of the appellee. *Byrant v. Cameron*, 473 So.2d 174, 179 (Miss.1985).

¶8. The standard and burden of proof to establish a prescriptive easement is the same as a claim of adverse possession of land. *Thornhill v. Caroline Hunt Trust Estate*, 594 So. 2d 1150, 1152 (Miss. 1992) (citing *Dethlefs v. Beau Maison Dev. Corp.*, 511 So. 2d 112, 117 (Miss. 1987)). As such, a person

seeking to establish a prescriptive easement must show that possession was "(1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful." *West v. Brewer*, 579 So. 2d 1261, 1262 (Miss. 1991) (quoting *Stallings v. Bailey*, 558 So. 2d 858, 860 (Miss. 1990)). "[U]se by express or implied permission or license, no matter how long continued, cannot ripen into an easement by prescription since adverse use is lacking." *Myers v. Blair*, 611 So. 2d 969, 971 (Miss. 1992). However a long established principle under Mississippi law is that "[a]n easement claimed as a right and used continuously, openly, and for a period of ten years or more, is sufficient to establish a right by prescription equivalent to a deed conveying such right." *Rutland v. Stewart*, 630 So. 2d 996, 999 (Miss. 1994) (citing *Jenkins v. McQuaid*, 153 Miss. 185, 193, 120 So. 814, 816 (1928)).

¶9. Based on the testimony at trial, the chancellor found that Leon Douglas's use of the road across J. B. Tenhet's land was under a claim of right. This was supported by the testimony of Willie Cooper, who had assisted Douglas in construction of the road. Cooper attested to an oral agreement between Douglas and Tenhet, as well as the significant contribution in time and resources made by Douglas in constructing the road back in the early sixties. The record also reveals that Leon Douglas used the road openly and continuously for thirty years, far in excess of the statutorily required period. Miss. Code Ann. § 15-1-13 (Rev. 1995). As such, the chancellor found the requirements of a prescriptive easement under a claim of right were met by Mrs. White. *Rutland*, 630 So. 2d at 999. We find the chancellor's decision supported by substantial evidence with no evidence of manifest error. In the absence of such error or abuse of discretion, this Court will not disturb the factual findings of the chancellor. Accordingly, we find no merit to these assignments of error.

¶10. **THE JUDGMENT OF THE CHANCERY COURT OF OKTIBBEHA COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS. STATUTORY PENALTIES AND INTEREST ARE AWARDED THE APPELLEE.**

**BRIDGES, C.J., THOMAS, P.J., COLEMAN, DIAZ, HERRING, KING, AND PAYNE, JJ., CONCUR. McMILLIN, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, J.**

McMILLIN, P.J., DISSENTING:

¶11. I respectfully dissent. Leon Douglas's initial use of the road across Tenhet's property was by Tenhet's permission. The majority concedes this, finding that Douglas's long years of using the road across Tenhet's property began with a figurative, if not literal, handshake.

> A use that has its inception in the permission of the owner will continue as such until a distinct and positive assertion of a right hostile to the owner is brought home to him by words or acts.

*Patterson v. Harris,* 239 Miss. 774, 125 So. 2d 545, 550 (1960) (citation omitted). There is no exception to this rule based on either (a) the fact that the permittee expended his own funds in constructing

or maintaining the roadway, or (b) the fact that the permissive use continued for so long a time that it seems unconscionable to permit its summary termination.

¶12. The majority suggests that this fundamental concept of law concerning permissive easements can be overlooked based on the conclusion that Douglas's (and White's) use of the road was under a claim of right. Prescriptive easement claims are subject to essentially the same legal analysis as adverse possession claims. *Thornhill v. Caroline Hunt Trust Estate,* 594 So. 2d 1150, 1152 (Miss. 1992). Occupying the disputed property under a claim of right is but one of multiple elements of an adverse possession claim. The possession must not only be under a claim of right, the basis for the claim must be hostile to the interest of the record owner. *Dethlefs v. Beau Maison Development Corp.,* 511 So. 2d 112, 117 (Miss. 1987). "Hostile" in this sense does not necessarily involve proof of angry exchanges or the existence of hard feelings between the litigants. Rather, the concept of "hostility" means that the claim asserted by the adverse possessor encompasses a total rejection of any right in the record owner (or others) to interfere with his possession. In this case, Douglas's claim of right to the easement depended for its very existence on Tenhet's consent. It is the absence of the requisite hostility to Tenhet's superior title that is fatal to White's claim.

¶13. The needed hostility to Tenhet's superior title was lacking at the inception of the easement and there is nothing in the record to indicate that, at some point after the permissive use began (a) Tenhet indicated a desire to end Douglas's use of the road but Douglas thereafter persisted in using the easement, or (b) Douglas informed Tenhet by some unequivocal means that he was of the opinion that his continued use of the easement no longer depended on its consensual origin for its vitality.

¶14. Permitting the cancellation of this permissive easement after so long a time may seem, at first blush, to be a harsh result. Nevertheless, it is clearly the result mandated by the applicable law. Had Douglas, apparently untutored in the law of real property, availed himself of even a minimal amount of legal consultation regarding the advisability of depending on Tenhet's good graces for access to his property, there is little doubt that he could have been easily informed of his predicament and the risks inherent in relying upon such a legally tenuous means of entry to his land. Whether he, in fact, obtained such advice and chose to assume the risk of an unanticipated termination at any moment or continued for over thirty years completely uninformed as to his legal rights in the circumstances, it is difficult to conclude that the result the law compels in this case is, after all, particularly harsh. I would reverse and render the chancellor's judgment.

**SOUTHWICK, J., JOINS THIS SEPARATE WRITTEN OPINION.**