# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CA-00150-SCT

*MARTHA L. BIDDIX, EXECUTRIX OF THE*
*ESTATE OF JAMES R. BIDDIX, AND GREGORY*
*L. WILLIAMS*

*v.*

*MR. AND MRS. CYRUS McCONNELL, JR. AND*
*MR. AND MRS. CLIFTON L. NOEL*


| | |
|---|---|
| DATE OF JUDGMENT: | 08/08/2003 |
| TRIAL JUDGE: | HON. JAYE A. BRADLEY |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | HENRY P. PATE |
| | EDDIE C. WILLIAMS |
| ATTORNEYS FOR APPELLEES: | JOHN MAJOR KINARD |
| | KEVIN M. MELCHI |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 09/15/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     In this real estate easement dispute between the operators of a golf course and adjacent

homeowners, the operators appeal from a chancery court judgment compelling them to

remove a concrete golf cart path and out-of-bounds markers placed on the homeowners'

property.    Because the chancellor correctly found that the easement granted by the

subdivision's protective covenants did not authorize the path or the markers and that the

operators failed to prove a prescriptive easement, we affirm.

**FACTS AND PROCEEDINGS BELOW**

¶2.     Mr. and Mrs. Cyrus McConnell and Mr. and Mrs. Clifton Noel make up two neighboring households, each owning and residing on land abutting the St. Andrews Golf Course via the backyards, or the residences' west sides.  The neighborhood in question is called "St. Andrews" and is located in Ocean Springs, Mississippi.  Cyrus McConnell testified that their family had lived in their home, located in St. Andrews, for twenty-nine years.  Susan Noel testified that their family had lived there for eleven years.  Pursuant to the subdivision's protective covenants, the golf course retains an easement of twenty-five feet onto the McConnells' and the Noels' land from the course on the west.  This easement is to be used for utilities and access to those utilities under the plain language of the covenant. The McConnells and the Noels have both planted and maintained shrubbery, as natural barriers, on the "home side" of the easement in order to help keep traffic from the golf course out of their respective yards.  These barriers would have been placed closer to the golf course, but that would have interfered with the right of the golf course operators, James R. Biddix and Gregory L. Williams, to enter that land for utility purposes.  Also,  Biddix and Williams could have rightfully removed any landscaping, fencing, etc. that was erected within the easement or on the golf course side of the easement should the need arise to improve or maintain utilities in that area.

¶3.     In 1998, Biddix and Williams installed a concrete golf cart path across the land of the McConnells and the Noels and the easement in question, and the McConnells and the Noels

2

claim this was done in violation of the plain language of the covenant. Prior to the concrete path, a path of cinder, shells, gravel, and dirt existed, and its location has fluctuated through the years, not remaining static. Prior to the concrete path, there was no defined path through the Noels' yard, and subsequent to the construction of the concrete path, the McConnells suffered significant drainage problems. Additionally, Biddix and Williams have continually placed out-of-bound markers and painted out-of-bounds lines in the yards of the McConnells and the Noels. Again, the placement of these markers has fluctuated greatly over the years, as there is no set location for these markers. When these markers were placed in the yards of the McConnells and the Noels, they were promptly removed by them in protest and with the full knowledge of the golf course. The complaints over these markers began in the 1980's and continued until approximately 1997, prior to the construction of the concrete path.

¶4.    Similarly, after the construction of the concrete path, Biddix and Williams began painting out-of-bounds lines, as mentioned previously. Prior to the construction of the cart path, there were no painted lines in the yard of the Noels. After the construction of the cart path, Biddix and Williams began painting out-of-bounds lines on the property of the McConnells and the Noels. These lines were openly rejected by the McConnells and the Noels, and McConnell painted over them with green paint. Then, Biddix and Williams would come out and paint over the green paint with white paint, knowing that McConnell objected to the lines being there. Nothing in the record suggests that these out-of-bound

3

markers or lines were ever placed in the exact location after being removed by the McConnells and the Noels.

¶5.     On January 20, 1999, the McConnells and the Noels filed their complaint in the Chancery Court of Jackson County, Mississippi, alleging that Biddix and Williams, the golf course operators, placed a "permanent, paved golf cart path over and across" their land and that they also placed out-of-bounds markers and other designators without their consent. The McConnells and the Noels sought injunctive relief, monetary damages, attorney's fees, and equitable relief. On June 9, 1999, Biddix and Williams filed their answer and also asserted a counterclaim, sounding in adverse possession and prescriptive easement. On December 6, 2001, James R. Biddix died, so on January 2, 2002, the court entered an order for substitution of parties. The court substituted his widow and executrix of his estate, Martha L. Biddix, as successor defendant to James R. Biddix, and the court also acknowledged Martha L. Biddix, in her personal capacity, as defendant.

¶6.     Before the trial on the merits, the chancellor viewed the property at issue. Following a trial, on August 8, 2003, the chancellor entered a judgment granting a permanent injunction, ordering the defendants to remove the offending golf cart pathway and "any out of bounds makers" within "sixty (60) days following the deadline for any appeal of this action." The chancellor also denied any award of monetary damages and ordered that the property of the plaintiffs "shall not be left in a state of disrepair by the Defendants and all

4

debris existing therefrom shall be removed." Accordingly, Biddix and Williams timely filed a notice of appeal, and this appeal ensues.

**ANALYSIS**

**I.     Did the Chancellor Err by Determining That the Cart Path Was Not a Proper Use of the Easements?**

¶7.     "The initial question of whether a contract is ambiguous is a matter of law." ***Rotenberry v. Hooker***, 864 So. 2d 266, 269 (Miss. 2003).  We review question of law de novo.  ***G.B. "Boots" Smith Constr. Corp. v. Cobb***, 860 So. 2d 774, 776-77 (Miss. 2003). However, if the contract is found to be ambiguous, the subsequent interpretation is a finding of fact.  ***Rotenberry v. Hooker***, 864 So. 2d at 269.  This Court's "review of a chancellor's findings of fact is the manifest error/substantial evidence rule."  ***Miss. State Tax Comm'n v. Med. Devices, Inc.***, 624 So. 2d 987, 989 (Miss. 1993).

¶8.     Biddix and Williams aver that the easement in question is unambiguous and  permits the golf cart path and out-of-bounds area.  The recorded plat of the St. Andrews Subdivision shows a twenty-five (25) foot rear easement retained by the subdivision owners, Biddix and Williams.  At issue in this case is one of the protective covenants which pertain to this easement.  The language of the Amendment to Protective Covenant No. 16 provides:

> [t]he undersigned expressly reserves for itself, its successors, and assigns, a 5 foot easement along the front and rear line (except all line contiguous to golf fairways along with the undersigned reserves hereby a 25' easement) and a 5' easement along the sidelines of each and every lot for the installation of utilities or other uses by it deemed to be necessary for the service of the property in any walls, fences, paving, planting, or other improvements placed

thereon by the owner of the property on which the easement lies shall be removed, if required, by the undersigned or its assigns, without compensation to the owner of such lot. This reservation includes the right to re-enter upon any easement for the purpose of locating, erecting, maintaining and constructing any drain, culvert, sanitary or storm sewer, water main, electric and telephone lines, and other utilities; the undersigned specifically reserving the right to assign any and all easements hereby reserved.

Biddix and Williams assert that "[n]ecessary for the service of the property" in the protective covenants clearly means the golf course. They state that if the covenants were not referring to the golf course, "then there was no need to differentiate between lot lines abutting the golf course versus all other lot lines in the same sentence." Biddix and Williams claim that "[a]ny other interpretation unreasonably strains logic and credulity."

¶9. The McConnells and the Noels contend that the easement is only for installing or servicing utilities, and since the golf cart path is not needed for these purposes, it should be removed. At trial, Cyrus McConnell testified that there are utility easements lying within the twenty-five foot easement in the rear of his lot. He stated that "[t]here is a television cable easement, in the easement. There is a telephone line in the easement, and I think there is some power lines in the easement." He also stated that there were underground utilities as well. He also testified that up until the concrete golf path was installed, there were never any painted lines on his shrubbery or property. Susan Noel testified that prior to the installation of the golf cart path, there were no painted lines on the ground inside her property line that purported to be designated an out-of-bounds marker. McConnell stated that "[t]hey [the golf course owners] have painted this line here two or three times . . . they would come back and

6

I would take green paint and paint out their line and maybe a month later they would come back and paint it again. And then I would get green paint and I would paint over their line again . . . ."

¶10. Regarding the out-of-bound markers, McConnell testified that "over the years, they have attempted to put markers inside that, inside the easement. Now, I pick them up and threw them out on the golf course." When asked why he threw them on the golf course, he answered "because it was on my property. That wasn't– that wasn't the out-of-bounds area. And I also placed an out-of-bounds down there on the northwest corner and the golf course pulled it up, so we had a Mexican standoff." He also stated that he had never left the out-of-bounds markers on his property for any length of time. McConnell stated that he openly displayed his displeasure to the owner of the golf course and golf "pros" that frequented the course. He testified that "[s]ometimes they would decide to put an out-of-bounds marker, and I would throw it out and went over to the clubhouse . . . And I would tell him [the owner], I said, you are on my property and I took the stake down." He also testified that he "went over and had a little round with, I think Mike Jerome, I think is his name, was a pro there. I have talked to him a couple of times about them trying to put out-of-bounds markers inside my property." McConnell also stated that he had observed an out-of-bounds marker on the northwest side of the Noels' lot, and on many occasions, the golf course attempted to place a marker between the Noels' lot and his lot where the golf path turns. When the golf

7

course placed the marker between their lots and if it was located "in on the easement" McConnell would pull it down and throw it away.

¶11. McConnell also testified that since the installation of the cart path, his property has not drained properly. He said prior to the cart path's construction, everything would drain into the drainage ditch. However, "[n]ow, what has happened here is this cart path, when they laid the concrete, they left it raised above the ground, not flush, and then they come along later and filled in with dirt, so the golf carts would have a smooth transition up on it . . . So essentially, this cart path is a dam around my lot."

¶12. Susan Noel testified that people continue to drive golf carts into her yard and that the situation is no better or worse since the construction of the concrete path. McConnell testified that years ago, he did not have that problem. He attributed this to the fact that "they weren't trying to cut across the corner there" because the area was "grown up." Specifically, the "whole area west of the Noels' lot, all the way over to the water hole. That was grown up completely when I first moved there." McConnell stated that now, he does have golfers driving golf carts in his yard. He stated:

> [t]hey are in my yard every day . . . I don't have any objection to golfers coming into my yard, I know some of them are going to hit their ball in the yard and everything, and they come and get it. But occasionally you will have a few irate golfers who decide he likes to drive their golf carts in your yard and run circles looking for the ball, they are too lazy to get out and look for the ball. They want to run their golf cart around there.

When asked if this type of behavior has been constant since he had lived there, he answered that it was not that way when he first lived there. He stated that he thought this change

8

occurred as a result of people complaining about losing their balls, and so the golf course "finally kept cutting out and cutting out, so finally they thinned it out so they could play, get in there. And then they–I guess then they started running their carts in through that area."

¶13. The chancellor found that the golf cart path was not a permitted use, as stated by the unambiguous covenant. She held that:

> [i]t is well settled law in Mississippi that only when a contract or deed has an ambiguity, within its four corners, that construction or those terms involve triable issues of facts. *Hobgood v. Koch Pipeline Southeast, Inc.*, 769 So. 2d 838 (Miss. Ct. App. 2000); *Shelton v. American Insurance Co.*, 507 So. 2d 894, 896 (Miss. 1987). After looking at the easement in question the Court does not find it to be ambiguous. The Amendment of Protective Covenants [Exhibit P-2] is straight forward and clearly contemplates the easement for utility purposes and access for necessary repairs to utilities. The Court finds that the language does not contemplate the installation of a cart path along a utility easement and such is not a permitted use.

Biddix and Williams cite law regarding the three-tier analysis that is used when interpreting the meaning of contracts. However, this analysis is unnecessarily discussed because the plain meaning of the contract is found within the four corners of the document, as quoted above from Protective Covenant 16. Biddix and Williams claim that the chancellor failed to consider all of the protective covenant's stated purposes, such as the allotment for "other uses by it deemed to be necessary for the service of the property." They also assert that the golf course developer retained this 25 foot easement along the golf course for the purpose of benefitting the golf course and not to benefit the abutting lot owners.

¶14. The McConnells and the Noels contend that Mississippi law requires that a document is to be considered "as a whole in order to ascertain the intention of the parties." *Hobgood*

9

***Koch Pipeline Southeast, Inc.***, 769 So. 2d at 843. They further contend that there are two sections of the protective covenant that refute the argument presented by Biddix and Williams and also support the findings of the chancellor. The first is "for the *installation* of utilities *or* other uses by it deemed to be necessary for the *service* of the property." (Emphasis added). Biddix and Williams assert that this phrase gives them essentially limitless use of the land so long as they "deem" it necessary for the golf course in their own judgment. "Service" is defined as "to repair or provide maintenance for." *Webster's Third International Dictionary* 2075 (1986). Therefore, by using the plain language of the covenant, the "other uses", for which Biddix and Williams are allowed access to the easements, must be related to repair and maintenance. Simply put, the "other uses" phrase allows Biddix and Williams to take whatever steps that are reasonably necessary to install or repair/maintain these utilities. During his testimony at trial, Gregory L. Williams admitted that the cart path was not necessary for servicing the utilities contained in the easement. Therefore, the chancellor correctly determined that since the easement is only for installing or servicing utilities and the path is not needed for those purposes, it should be removed.

¶15. The second phrase found within the protective covenant that refutes the claims of Biddix and Williams is "[t]his reservation includes the right to re-enter upon any easement for the purpose of locating, erecting, maintaining and constructing any drain, culvert, sanitary or storm sewer, water main, electric and telephone lines, *and other utilities*." (Emphasis added). This unambiguously states that the improvements made to the easement by Biddix

10

and Williams must be related to utilities. The covenant contains no "catch-all" phrase that would allow Biddix and Williams to expand the use of the easements beyond utilities.

¶16. Accordingly, we find that Protective Covenant 16 is not ambiguous. Additionally, we find that the chancellor correctly ruled that the installation of the concrete cart path was not a proper use of the easement. There was no abuse of discretion, because the chancellor's findings are supported by substantial, credible evidence.

## II. Did the Chancellor Err by Ruling That No Prescriptive Easement Had Been Obtained?

¶17. This Court's "review of a chancellor's findings of fact is the manifest error/substantial evidence rule." *Med. Devices, Inc.*, 624 So. 2d at 989. This Court has held that a chancellor's finding of fact may only be disturbed if the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or applied the wrong legal standard. *Denson v. George*, 642 So. 2d 909, 913 (Miss. 1994).

¶18. Biddix and Williams claim that the chancellor erred in finding that an easement by prescription did not exist. The granting of a prescriptive easement would have given Biddix and Williams access to the McConnells's and the Noels' land beyond the 25-foot utility easement to place out-of-bounds markers for the golf course. This Court has held that the standard burden of proof needed to establish a prescriptive easement is the same as for a claim of adverse possession of land. *Thornhill v. Caroline Hunt Trust Estate*, 594 So. 2d 1150, 1152 (Miss. 1992). To acquire property by adverse possession or by prescriptive easement the claimant must show that the possession was : (1) open, notorious, and visible;

11

(2) hostile; (3) under claim of ownership; (4) exclusive; (5) peaceful; and (6) continuous and uninterrupted for ten years. *Sharp v. White*, 749 So. 2d 41, 42 (Miss. 1999) (citing *Myers v. Blair*, 611 So. 2d 969 (Miss. 1992). *See also* Miss. Code Ann. § 15-1-13 (Rev. 2003); *Dethlefs v. Beau Maison Dev. Corp.*, 511 So. 2d 112 (Miss. 1987); *Roy v. Kayser*, 501 So. 2d 1110, 1111 (Miss.1987). The person claiming the possession has the burden of proving each of these elements by clear and convincing evidence. *West v. Brewer*, 579 So. 2d 1261, 1262 (Miss. 1991).

¶19. The chancellor held that the four to five foot variance from the exact golf cart path that continued to occur over the years destroyed the adverse use by breaking the period of use. Biddix and Williams assert that this variance occurred due to the golfers' attempts to avoid muddy terrain. They also contend that "Mississippi law has never required that a 'worn path' follow an 'exact location' so as to deny a prescriptive easement." Biddix and Williams urge this Court to reverse the chancellor, apply the prescriptive easement as a matter of law, and grant them the right to use the prescriptive easement for a golf cart path.

¶20. In their brief, Biddix and Williams only specifically address the elements of hostility, exclusivity, and that it was under a claim of ownership. The reason they only address those elements is because they claim that it is "beyond cavil" that they met the elements of peacefulness, continued and uninterrupted use for 10 years, and plainly open and notorious uses. Accordingly, Biddix and Williams have not provided clear and convincing evidence of each element.

*Claim of Ownership*

¶21.    Through counsel, the McConnells and the Noels contend that Biddix and Williams cannot claim that they exercised ownership of this land for several reasons. First of all, Biddix and Williams are parties to the protective covenant 16 which grants the land back to them for utility purposes only, and it clearly recognizes that ownership is vested in the McConnells and the Noels, or the utility easement would not have been necessary. This Court has continuously held that the claim of ownership must exist at the beginning of the ten-year statutory period and also that possession of property is insufficient to sustain a claim of ownership by adverse possession or prescriptive easement. *Coleman v. French*, 233 So. 2d 796, 796-97 (Miss. 1970). *See also **Taranto v. Peoples Bank of Biloxi***, 242 Miss. 607, 136 So. 2d 213 (1962); ***Newman v. Smith***, 226 Miss. 465, 84 So. 2d 512 (1956); ***Ball v. Martin***, 217 Miss. 221, 63 So. 2d 833 (1953). Biddix and Williams never claimed this land to be theirs, as evidenced by their reliance on the covenant granting them an easement.

¶22.    Secondly, Biddix and Williams did not solely care for the property in question. Testimony provided by the Noels and McConnells both demonstrate that they provided the upkeep on the 25-foot easement, which is of course, their property. Susan Noel testified that they had maintained their property "[t]o the very edge of where our property line is to where any where there was grass it has always been mowed." She also testified that they [the Noels] continue to pick up pine cones and brush. Noel also testified that she moved shrubs from her front yard and placed them in her back yard on the property line and in accordance with the

13

shrubbery line of the McConnells so that it would "make it all continuous." Noel stated that even after the shrubs were placed there, that they continued to maintain their yard beyond the shrubs. Similarly, McConnell testified that either he has or people he has hired have continuously cut the grass all the way back to his property line. He also stated that he continues to "keep all of the pine cones and things picked up around these trees here." When asked if the golf course had ever cut in the area of the easement, McConnell stated:

> Years ago they didn't. Here recently, they have but you can't keep them off of it, because they are liable to be out there at six o'clock in the morning and run down through there before you even know they are there. But I also mowed it and told people to mow it. Years ago they wouldn't mow it, because they claimed that the roots of some of these pine trees down there on the north end was tearing up their mowers.

The record clearly shows that Biddix and Williams did not care for the property in question as if it were their own.

*Exclusivity*

¶23. Biddix and Williams claim that the chancellor misconstrued the exclusivity requirement, and they assert that it is not necessarily required that the use of a prescriptive easement must be exclusive of the general public. ***Jenkins v. McQuaid***, 153 Miss. 185, 120 So. 814, 816 (1929). They assert that "[i]t is therefore not necessary for the use of the alley by Jenkins to have been exclusive of all other persons; other, also, may have used it as a means of ingress and egress to their property." ***Id.*** Biddix and Williams also state that "[w]hen trying to establish the elements of a prescriptive easement, requiring the litigant to prove a lack of permission (exclusivity) is unreasonable because the law typically frowns

14

upon requiring a party to prove a negative." ***Dieck v. Landry***, 796 So. 2d 1004, 1008 (Miss. 2001). However, the refusal by Biddix and Williams' to care for the land is not consistent with attempting to exclude others. Further, Biddix and Williams state that the McConnells and the Noels should have built barriers to keep other people off of the easement. Biddix and Williams state that "[t]here is no evidence that Plaintiffs attempted to enclose the disputed area as a claim to exclusive possession." This Court defined exclusivity as having the intention to "appropriate and use the land as his own to the exclusion of all others, irrespective of any semblance or shadow of actual title or right." ***Rawls v. Parker***, 602 So. 2d 1164, 1169 (Miss. 1992).

¶24. However, this assertion by Biddix and Williams is clearly misplaced. This Court has stated that "[i]t is well settled that joint use of property is insufficient to establish adverse possession." ***Gadd v. Stone***, 459 So. 2d 773, 774 (Miss. 1984) (citing ***Fant v. Standard Oil Co.***, 247 So. 2d 132 (Miss. 1971)). Further, the easement granted in the covenant greatly limited the Noels' and the McConnells' ability to demonstrate their exclusive ownership and possession. The clear language of Protective Covenant No. 16 states that "any walls, fences, paving, planting, or other improvements placed thereon by the owner of the property on which the easement lies shall be removed, if required, by the undersigned or its assigns, without compensation to the owner of such lot." Therefore, any structure, natural or not, that the Noels and the McConnells erected to firmly mark their boundary and prevent Biddix and Williams from placing out of bounds markers or the cart path upon their land was subject to

15

removal without compensation. Cyrus McConnell specifically testified that he planted shrubs inside the easement because of the possibility of their being destroyed due to utility repairs. As previously mentioned, the Noels simply lined their shrubs up with those of the McConnells. It would be inequitable to punish the McConnells and the Noels for failing to create a boundary to an unlawful intrusion onto their land, when that boundary could have been destroyed within the terms of the covenant if repairs or maintenance needed to be performed on the utilities present in the easement.

*Peaceful*

¶25.    Biddix and Williams claim that their use of the utility easement was peaceful because there was no violence. Biddix and Williams proffer no case law that supports their assertion that the law requires potentially unlawful violent acts by the rightful possessors of the land in order to destroy a prescriptive easement. "Peaceful" is defined as "marked by, conducive to, or enjoying peace, quiet, or calm." *Webster's Third International Dictionary* 1160 (1986). The record clearly shows that McConnell objected to the use of the land by the golf course. Examples of his objections include picking up the out-of-bounds markers and throwing them back onto the course and also painting over the white lines put on his property by the golf course with green spray paint. McConnell also testified that he had several discussions with previous owners of the course, as well as the former general manager for St. Andrews, Mike Jerome, about his displeasure with the placement of the markers on his property. These discussions occurred off and on between 1989 and 1997. Biddix's and Williams's claim that

their use of the easement was peaceful is erroneous because McConnell did not enjoy peace, quiet, and calm while Biddix and Williams unlawfully used his property over his blatant objections.

*Continuous and Uninterrupted for 10 Years*

¶26. Biddix and Williams also maintain on appeal that it is "beyond cavil" that their use was uninterrupted for more than 10 years, but provide no evidence to prove this assertion. This Court has held that sporadic, noncontinuous use is insufficient to establish a prescriptive easement. *Eastlawn Dev. Co. v. Wells*, 311 So. 2d 334, 337 (Miss. 1975). This Court has also held that:

> [w]e think the majority of the courts and the sounder reason hold that there must be something more than a protest to interrupt the running of a claim of right followed by actual users; there must be at least an interruption of the use of the way claimed as a right by the opposing person who opposes such claim. Where another is asserting a claim of right and using a passageway under such claim, a party must do something more than merely verbally protest; there must be a physical interruption or a court proceeding or some unequivocable act of ownership which interrupts the exercise of the right claimed and being used by the opposite parties.

The removal of boundary stakes, caring for the land, and granting Biddix and Williams and their predecessors an easement for utility purposes are all "physical interruptions" and/or "unequivocal act(s) of ownership" to defeat this element needed for a prescriptive easement.

¶27. Additionally, other evidence that defeats the claim of Biddix and Williams include the fact that the out-of-bounds markers as well as the cart path were not permanent and varied in their location. *See Eastlawn Dev. Co. v. Wells*, 311 So. 2d at 337. In the *Wells* case, the

17

claimant was denied adverse possession when it could not be ascertained that he occupied any specific portion of land continuously for the requisite time period. *Id.* According to the testimony of Steven McVay, Biddix and Williams did not always place out-of-bounds markers in the same location, which caused the boundaries to fluctuate. Accordingly, they did not occupy a specific portion of land consecutively because if the location of the markers changed, then so did the land being claimed.

¶28. Biddix and Williams have not met the requirements to establish a prescriptive easement because they have not established by clear and convincing evidence each of the six required elements. Indeed, they failed completely to address three. We find that the chancellor did not commit manifest error because there is substantial evidence that supports her finding that a prescriptive easement does not exist.

**CONCLUSION**

¶29. For these reasons, this Court finds that the chancellor did not err by deciding that the cart path and markers were not proper uses of the easements and that Biddix and Williams did not prove that a prescriptive easement existed. Therefore, the judgment of the Jackson County Chancery Court is affirmed.

¶30. **AFFIRMED.**

**WALLER AND COBB, P.JJ., EASLEY, CARLSON, GRAVES AND RANDOLPH, JJ., CONCUR. DIAZ AND DICKINSON, JJ., NOT PARTICIPATING.**

18