630 So.2d 996 (1994)
James Earl RUTLAND and Jackie Lou Rutland
v.
John T. STEWART, Sandra A. Stewart, Joseph J. King, Jr. and Alison King.
No. 91-CA-0381.
Supreme Court of Mississippi.
January 20, 1994.
Richard E. Stratton, III, Brookhaven, for appellants.
William D. Boerner, Boerner & Breeland, Brookhaven, for appellees.
Before En Banc.
SMITH, Justice, for the Court:
James and Jackie Rutland brought suit in the Chancery Court of Lincoln County against the Stewarts and the Kings, seeking to establish the existence of an easement by prescription in a gravel road partially traversing the lands of the appellees. From the judgment of the chancellor entering a directed verdict against them, the Rutlands appeal to this Court seeking a review of the following, issue:
FOR THE PURPOSE OF MAKING OUT THE TEN YEAR PERIOD OF A PRESCRIPTIVE EASEMENT, CAN TACKING PERIODS BE USED BY SUCCESSIVE ADVERSE USERS SO AS TO ESTABLISH A PRESCRIPTIVE EASEMENT?

THE FACTS
In 1978 Mr. Hillary H. "Dick" Martin owned property in the west 1/2 of Section 36, Township 8 North, Range 9 East, in Lincoln County, Mississippi. Dick testified he sold land to his cousin, Frank Martin, which Frank sold or gave to his daughter and son-in-law, Viola and Steve Brown. The Browns subsequently decided to build a house on that land. Dick stated that in order for the house to be built, he and Frank each used a strip of their land to establish a right-of-way extending from the Brown home to an adjoining paved road. Dick testified the road was built through a verbal agreement between himself and his cousin for travel to the Brown home. There was no reservation for an easement when Dick sold part of his property to Frank.
Thus, in 1978, a gravel road was built which ran from the home of Viola and Steve Brown (now the property of the Rutlands herein) to an adjoining paved road. Dick testified that Bill Diamond, a county supervisor, *997 told the Martins to mark the location for the road, and Diamond then sent a "motor patrol" to ditch and gravel it. Dick stated the road was fenced by Frank Martin on one side and himself on the other. The Martins also made a turn-around at the end of the road for the local school bus. Originally, the road was thirty feet wide. Dick stated the road had been maintained by the county until a few months before trial.
Finally, Dick testified that the Browns' house burned down on February 11, 1985. He stated that although he no longer had a need to use the road to visit the Browns, he still went out to the road often, even after divesting his title to the property, because he had cattle and other land in the area; Dick stated he could see the road was being maintained and knew the school bus and the mail carrier used the turn-around until shortly before trial.
Frank Martin testified that in 1978 he purchased from Dick 70 acres of land in the West 1/2 of Section 36, Township 8 North, Range 9 East, of Lincoln County. Frank confirmed that the county built the road, graveled it, and furnished lumber with which he and Dick built a bridge across the road. Frank testified he later sold the Stewarts part of his property. At that time, the gravel road was in place. Frank also stated that from personal knowledge he knew the county had maintained the gravel road; in fact, he noted he never had to call to request that such maintenance be done. The property upon which the Kings' house is now situated was also first owned by Frank, who conveyed it to his son, Crawford Martin. This property was mortgaged to and foreclosed by Loans, Inc., and sold to the Kings in 1988. No reservation of an easement was contained in the conveyance of the property by Frank to his son.
Frank testified that following the fire at the Brown home, the Rutlands bought the site in 1987 and later built a new home. Frank recalled also that a Mr. Acy located a trailer on part of what is now the Rutlands' land between 1985 and 1987. Frank testified that Acy paid him $50 per month rent and estimated that Acy lived on the land and utilized the gravel road from between 6 to 8 months to over a year. Frank stated that when the Browns lived in their house the school bus traveled the road daily to pick up the Brown children. In addition, the bus also picked up the children of Crawford Martin whose trailer was located about half way down the length of the road.
Bill Terry, a bulldozer operator for the county in 1978, testified he cleared stumps from the area in question in order to build the gravel road at the direction of then County Supervisor Diamond. Terry stated the county hauled in gravel, and used motor graders to build the road. Afterwards, Terry testified, he had done maintenance on the road at least three or four times a year until he stopped working for the county in 1988.
Roland Ross, County Supervisor from 1984 to 1988, stated he was sure the county maintained the gravel road after he came into office. He admitted it was common practice for the county to maintain roads which led to private homes before and during his years in office.
Glen Rutledge testified he drove the school bus down the gravel road to pick up both the Brown children and the children of Crawford Martin. He estimated it had been about four years, or since 1986, since he had driven to the Martin trailer. In May of 1990 he could no longer use the turnaround at the end of the gravel road because a pole was placed in the road.
Sarah White testified she lived near the road in dispute, and was aware that the mail carrier used the road, at least since 1983. White recalled that Crawford Martin lived in his trailer along the road after the Brown house burned, but she wasn't sure for how long.
Esther Martin testified she was the postal carrier who traveled to the Brown's home every day since 1983. She stated the mailbox for that property, now the Rutlands' home, was located at the end of the gravel road. Ms. Martin remembered delivering mail to Crawford Martin for at least four or five years. She further recalled that a man named Mr. Acy rented space along the road and also received mail. She estimated she delivered mail to Mr. Acy for 1 1/2 to 2 years. *998 Upon cross-examination, Mrs. Martin testified that for a "very short time" after the 1985 fire she had no patrons along the gravel road. She explained that postal procedures require the postal service to wait three months before a road can be deleted from the carrier's route. She testified "there was always someone that came back within that time."
Joseph King, Jr. testified as an adverse witness. He stated he had "owned" the gravel road since he bought his property in 1988. He further stated he "never claimed it as far as blocking anybody from using it" until just before the current suit was instituted. King admitted the gravel road was there when he acquired his property and stated that the school bus, mail carrier and propane and butane trucks had been using the road. King testified the road was blocked as a result of "having disturbance of the peace problems with Mr. Rutland."
James Rutland testified he bought his property in 1987. At that time, Mr. Acy had a trailer which remained for about eight months thereafter. Rutland stated there had been maintenance under the direction of the county supervisor ever since he had arrived. He further stated the county garbage truck no longer picked up garbage at his home since the road had been blocked.

DISCUSSION

FOR THE PURPOSE OF MAKING OUT THE TEN YEARS PERIOD OF A PRESCRIPTIVE EASEMENT, CAN TACKING PERIODS BE USED BY SUCCESSIVE ADVERSE USERS SO AS TO ESTABLISH A PRESCRIPTIVE EASEMENT?
At the conclusion of the Rutlands' case in chief, the chancellor found as follows:
In summary, my ruling is this. I do not feel that the plaintiffs have met the burden of proof as to this road being a public road. I do feel that the plaintiffs made a prima facie case of over ten years prescriptive use of the road, but that the case fails because plaintiffs cannot make the ten years continuous use of the road without tacking and McIntyre v. Harvey, which I have already expressed my sentiments about, states that you cannot tack in this situation, therefore, I am going to sustain the defendants motion for a directed verdict and dismiss the complaint.
The Rutlands submit that, for purposes of establishing the required ten-year period of use necessary to acquire an easement by prescription, the "tacking" or adding together of successive periods of use by owners where privity exists between them, should be allowed. In order to so hold, the Rutlands suggest this Court overrule the decision found in McIntyre v. Harvey, 158 Miss. 16, 128 So. 572 (1930), which the chancellor relied upon in granting the directed verdict against them. The chancellor stated:
Frankly, I think this is one of the most absurd decisions that I have ever read in my life. It is incredible to me that a court could hold that in an adverse possession case, as opposed to a prescription case, where a potential adverse possessor is going to defeat a fee simple absolute title by adverse possession, that he can tack, and yet in a case where we are dealing with prescriptions in the narrow sense that I think we use it in Mississippi to refer to acquiring not fee simple rights, or any vested rights of ownership, but right of way, it strikes me as being incredible that a Court could reach a decision like McIntyre v. Harvey, but there it is.
In McIntyre v. Harvey, this Court reviewed the decision of the lower court in a case involving a dispute over the use of an alley. The evidence indicated that the alley had been in use under claim of right by the property owners along its east side, predecessors in title to the appellants, from the time the city had been mapped out. The chancellor found the appellants' right to use the alley had become fixed through usage under the claim of right and ordered obstructions blocking the alley removed. In affirming the lower court, this Court noted that the evidence showed "the former owners of the lots in question had used the alley under claim of right for a much longer period than the ten-year statute and that their right over the alley as an easement and passageway had become complete and vested... ." 158 Miss. *999 at 22, 128 So. 572. Thus, this Court determined that the former property owners had met the required ten-year period of usage and had, in themselves, acquired an easement by prescription.
In the next sentence, however, the Court continued: "It is true that a party cannot resort to the doctrine of tacking one's property to that of his predecessors whether [sic] neither possession is sufficient to acquire by prescription and user the right to the alley." Id. at 22-23, 128 So. 572. It was upon this language that the chancellor in the case sub judice relied in granting a directed verdict against the Rutlands. The Rutlands submit that this statement was dicta, as the Court had already determined a prescriptive easement had been established with no need to resort to tacking. The Rutlands submit, as did the chancellor, that there is no logical reason for the law in this state to allow tacking in cases establishing fee simple title by adverse possession, but not in cases of prescriptive easements.
The chancellor determined that the Rutlands had, as a matter of fact, established the necessary ten years use of the gravel road, but felt bound to deny their claim for an easement under McIntyre v. Harvey. The Kings and the Stewarts do not challenge the factual findings of the chancellor; rather, their response is framed around support for the Court's decision in McIntyre v. Harvey, and the view that the status quo should be maintained despite the law of other jurisdictions to the contrary. "Unless the Chancellor's determination of fact is manifestly wrong, this Court will uphold his decision." Cheeks v. Herrington, 523 So.2d 1033, 1035 (Miss. 1988), citing Dillon v. Dillon, 498 So.2d 328, 329 (Miss. 1986).
An easement claimed as a right and used continuously, openly, and for a period of ten years or more, is sufficient to establish a right by prescription equivalent to a deed conveying such right. Jenkins v. McQuaid, 153 Miss. 185, 193, 120 So. 814 (1928). The only question before this Court is whether the ten years may be established by tacking together the years of continuous use of former property owners with those of subsequent property owners.
Our review of the law of adverse possession in this state convinces this Court that there is no sound reason for applying the doctrine of tacking therein, while at the same time prohibiting its application in the establishment of prescriptive easements. This Court has stated, for instance, that the "standard and burden of proof to establish a prescriptive easement is the same as a claim for adverse possession of land." Thornhill v. Caroline Hunt Trust Estate, 594 So.2d 1150, 1152 (Miss. 1992); Dethlefs v. Beau Maison Development Corp., 511 So.2d 112, 117 (Miss. 1987). Further, this Court held nearly one hundred years ago, "[t]en years is the time in this state by which to acquire an easement in land. It would be irrational to hold that an easement may not be acquired by the lapse of time to confer title to the land by adverse possession." Alcorn v. Sadler, 71 Miss. 634, 14 So. 444 (1894). Given the similarities in our laws regarding adverse possession and easements by prescription, we find no logic in a rule prohibiting the doctrine of tacking from being applied in cases of easements by prescription.
We note McIntyre v. Harvey, a 1930 decision, has seldom been cited and never for the proposition that tacking may not be applied to establish an easement by prescription. Were this ever the rule in Mississippi, it is no more and to that extent McIntyre v. Harvey is hereby overruled. Finally, we note that our decision in the case at bar aligns our state with the vast majority of jurisdictions which have considered the issue and accepted that an easement by prescription may be acquired through tacking.[1]

*1000 CONCLUSION

The chancellor determined that the Rutlands had established ten years of continued use to acquire an easement by prescription. However, he granted a directed verdict in favor of the Stewart's and the King's on the basis of this Court's decision in McIntyre v. Harvey. This Court has determined that tacking may be applied in cases of prescriptive easements, as that doctrine is applied in cases of adverse possession. Accordingly, the Rutlands are entitled to and have acquired an easement by prescription in the gravel road abutting the properties of the Stewarts and the Kings. The decision of the lower court directing a verdict in favor of the appellees is reversed and rendered.
REVERSED AND RENDERED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, McRAE and JAMES L. ROBERTS, Jr., JJ., concur.
NOTES
[1] See V. Woerner, Tacking as applied to prescriptive easements, 171 A.L.R. 1278, 1279-81 (1947). The list includes Arizona, California, Colorado, Connecticut, District of Columbia, Georgia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Minnesota, Missouri, Montana, Nebraska, New Hampshire, New Jersey, New York, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, and Canada. To the above may be added Michigan, formerly cited as a contrary authority along with Mississippi. See Von Meding v. Strahl, 319 Mich. 598, 30 N.W.2d 363 (1948); Siegel v. Estate of Renkiewicz, 373 Mich. 421, 129 NW2d 876 (1964).