## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 2000-CA-00448-SCT

*PRENTIES B. DIECK*

*v.*

*PRESTON D. LANDRY, SR. AND DIANNE M. SCHEIB*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/03/2000 |
| TRIAL JUDGE: | HON. JAMES H. C. THOMAS, JR. |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | VICTOR A. DUBOSE |
| ATTORNEY FOR APPELLEES: | LONNIE SMITH |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 8/09/2001 |
| MOTION FOR REHEARING FILED: | 9/7/2001; denied 10/18/2001 |
| MANDATE ISSUED: | 10/25/2001 |

**BEFORE McRAE, P.J., DIAZ AND EASLEY, JJ.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1. Prenties B. Dieck appeals the finding of the Pearl River County Chancery Court that a prescriptive easement existed across his property for ingress and egress purposes benefitting Preston D. Landry, Sr., and Dianne M. Scheib. Upon a thorough review of the trial transcript and accompanying exhibits, we narrow Dieck's assignments of error and address the dispositive issue regarding whether Landry and Scheib effectively proved that a prescriptive easement existed across Dieck's property.

## FACTS

¶2. Prenties Dieck owns approximately two acres of property in Pearl River County, Mississippi. A twenty-two foot wide, three hundred forty foot long strip of this property, known at times as Toro Lane, serves as the basis for the underlying conflict in this appeal. All of the parties involved own neighboring property located between Meadow Lane on the west and Amigo Lane on the south. Additional neighboring landowners, not made party to this litigation, own property within the area that effectively landlocks Landry and Scheib from access to either Meadow Lane or Amigo Lane. The disputed strip of property (Passageway) runs along the southern border of Dieck's property from Meadow Lane east to Scheib's property line. This small, one lane, gravel passageway serves as the northern border to Landry's property. Both Dieck and Landry share a common eastern border with Scheib.

¶3. Landry acquired his property in December of 1968. When Landry purchased this piece of property, there was access over and across the land in question via the existing passageway, although it was not as well defined as it is today. In fact, testimony given at trial by Huey Smith confirmed that the passageway was first cut and used by landlocked property owners as early as 1962. Robert A. Lee further testified that he lived on property adjacent to the passageway and used it to access his land from 1966 through 1967. From 1968 through February 1999, Landry had unrestricted access over the property in question. In

March of 1969, George Livermore, Sr. and George Livermore, Jr. bought the property which contains the passageway. Landry never asked for nor received permission to continue use of the passageway, assuming that he had access to his property from Meadow Lane through his earlier purchase. In July of 1986, Dieck purchased the portion of the Livermore property containing the passageway.

¶4. Shortly thereafter, in June of 1987, Scheib purchased the property slightly further down the passageway from the Landry property. Scheib acquired the property and house from Ralph Lowery, who obtained the land from the Adams family. Michael Adams testified that he and his family lived on the property and used the passageway from October of 1980 until Lowery bought the land in July of 1986.

¶5. In 1987, Dieck approached Scheib and her now deceased husband claiming that the passageway belonged to him. He told them that they would have to find other access to their property. The Scheibs responded that they would look into the matter. Dieck also confronted Landry about his use of the passageway. Over the next several years, Landry and Scheib continued to use the passageway unabated. In 1991, Scheib requested the county place a fresh load of gravel on the passageway and grade it, and the county complied. This action enraged Dieck who renewed his conversations with Landry and Scheib in an effort to have them find alternate access to their land. That same year, Dieck sent a letter to each party telling them that he planned to re-fence his property, including the disputed passageway. Despite this admonition, Dieck did nothing to restrict Landry or Scheib's access to their property.

¶6. Dieck hired an attorney to explore alternative routes to the landlocked property and conduct meetings with Landry and Scheib, but these efforts failed for lack of enthusiasm among those involved. Landry and Scheib maintained that they already had access over Dieck's property and no other route was necessary. Finally, in February of 1999, Dieck built a fence across the passageway physically blocking access to Landry and Scheib's property.

## STANDARD OF REVIEW

¶7. This Court will not disturb the factual findings of a chancellor unless such findings are manifestly wrong or clearly erroneous. *Denson v. George*, 642 So.2d 909, 913 (Miss. 1994). When substantial evidence exists in the record to support the chancellor's findings of fact, those findings must be affirmed here. *Id.* However, questions of law will be reviewed de novo. *Holliman v. Charles L. Cherry & Assocs., Inc*., 569 So. 2d 1139, 1145 (Miss. 1990).

## LEGAL ANALYSIS

¶8. Landry and Scheib argued successfully at trial that they obtained a prescriptive easement over the passageway. Dieck submitted that Landry and Scheib used the passageway with his permission and the permission of his predecessor in title, thus negating any claim to a prescriptive easement because of our well-settled law that permission cannot ripen into easement by prescription. *Sharp v. White,* 749 So. 2d 41, 42 (Miss. 1999) (citing *Dethlefs v. Beau Maison Dev. Corp.,* 511 So. 2d 112, 117 (Miss. 1987)). In order to establish an easement by prescription, the claimant has the burden of proving that the use of the land is (1) open, notorious and visible; (2) hostile; (3) under claim of ownership; (4) exclusive; (5) peaceful; and (6) continuous and uninterrupted for ten years. *Myers v. Blair,* 611 So.2d 969, 971 (Miss. 1992). To determine whether these elements were satisfied, we review the evidence presented to support each.

   *(1) Open, notorious and visible*

¶9. A litany of testimony was presented by all involved parties and their respective witnesses that Landry and Scheib used the road in question on an almost daily basis for access to their home. Dieck was on actual notice of its use when he purchased his property. Further testimony was presented that the road was used at times by school buses, delivery trucks and other private and commercial vehicles. At times, the passageway appeared on assorted county maps denominated as Toro Lane. In fact, both Landry and Scheib had their mail delivered to mailboxes on the passageway when it was known as Toro Lane. Dieck later had the county reassess the nature of the passageway and mail delivery was stopped. It is impossible to classify this use as anything other than open, notorious and visible.

### (2) Hostile

¶10. Much of the argument at trial and on appeal concerns whether the use of the passageway by Landry and Scheib can be classified as permissive. As the trial court noted, there is no evidence that Landry or Scheib ever requested permission to use the passageway. Rather, they simply used it without regard to permissive considerations. George Livermore testified in an effort to clarify the permissive character of the passageway. The Livermores acquired their property after Landry, who used the passageway for ingress and egress purposes. It is clear from the testimony that Livermore and Landry never discussed the use of the passageway. It is equally clear, however, that Landry's use of the passageway was hostile to the Livermores' estate. For example, while there is uniform agreement that the passageway is not a public road, the evidence presented at trial regarding its use by the public delivering services to Landry and Scheib operates as a further reflection on its hostile use to Dieck's claims.

¶11. On one occasion, Livermore stated that if Landry angered him, Landry would have to use a pogo stick to get to his property. That one statement, over the span of these many years, was the only conversation mentioned at trial that related to the permissive use of the passageway. It is impossible to impute a clear meaning to it as its context was not thoroughly outlined in the record. In any event, no one took it seriously, including Livermore. Livermore never attempted to limit or end Landry's use of the passageway and the testimony at trial was clear that neither Landry nor Scheib understood their use to be permissive from Livermore or his predecessor in title.

¶12. When trying to establish the elements of a prescriptive easement, requiring a litigant to prove a lack of permission existed is unreasonable because the law typically frowns upon requiring a party to prove a negative. *Morris v. Fairchild Constr. Co.,* 2001 WL 35982, *2 (Miss.Ct. App. Jan. 16, 2001) (See *United States v. Denver & Rio Grande R.R.,* 191 U.S. 84, 92, 24 S. Ct. 33, 48 L. Ed. 106 (1903)).

### (3) Under claim of ownership

¶13. Both Landry and Scheib operated under a claim of ownership in regard to the passageway. When Landry purchased his property, the passageway was in use and had been used by previous tenants. No mention of the passageway was made by the attorney who participated in the real estate closing because it was the only way to access the land. When Landry purchased landlocked property, an easement by necessity arose. An easement by necessity arises by implied grant when a part of a commonly-owned tract of land is severed in such a way that either portion of the property has been rendered inaccessible except by passing over the other portion or by trespassing on the lands of another. *Huggins v. Wright,* 774 So.2d 408, 410 (Miss. 2000) (citing *Taylor v. Hays,* 551 So.2d 906, 908 (Miss.1989)). An easement by necessity requires no written conveyance because it is a vested right for successive holders of the dominant tenement and remains binding on successive holders of the servient tenement. *Huggins,* 774 So.2d at 411.

*See also* **Broadhead v. Terpening,** 611 So.2d 949, 954 (Miss.1992) (holding that the owner of the larger tract cannot create a landlocked parcel by conveying an interior portion, so easement is conveyed whether described or not when the dominant estate is deeded; easements by necessity run with the land and are deeded with each conveyance regardless of description). An identical situation arose when Scheib purchased her property. Additionally, Landry and Scheib had the county come out and work on the passageway in 1986 and 1993 and times in between to maintain its effectiveness as an access route to Meadow Lane. Landry and Scheib clearly operated under a claim of ownership.

### (4) Exclusive

¶14. Scheib's property currently serves as her full-time residence, and Landry formerly resided on his property. Landry and Scheib made exclusive use of the passageway by having the postal service deliver their mail to 8 Toro Lane and 15 Toro Lane, respectively, at various points prior to this action. They further utilized the passageway by having other county and business vehicles such as the water company and telephone company access their property for private land use purposes.

### (5) Peaceful

¶15. Other than the expected arguments and disagreements associated with a property dispute that arises among neighbors, little evidence was presented that anyone breached the peace in their use of the passageway.

### (6) Continuous and uninterrupted for ten years

¶16. Landry used the passageway continuously and uninterrupted from the date of his purchase in 1968 until February of 1999. Scheib used the passageway continuously and uninterrupted from the date of purchase in 1986 until February of 1999. By either standard, the ten year limitations period expired before Dieck erected his fence across the passageway. In **Logan v. McGee**, we held that

> a prescriptive right to an easement is equivalent to a deed conveying such right, and that proper acquisition of the right is presumed from adverse and continuous enjoyment of a right-of-way for the ten year statutory period. If an easement by prescription is equivalent to the conveyance of such right by deed, then it follows that such an easement will run will the land. In **Browder v. Graham,** 204 Miss. 773, 38 So.2d 188 (1948), Browder purchased a dominant tenement and it was ruled that 'the conveyance to him of the dominant tenement carried with it the appurtenant easement.' The acquisition of an easement by adverse user for the statutory time is no less efficacious than a deed (properly drawn and delivered) in investing such user with full rights to use, enjoy, own and convey such an easement.

**Logan v. McGee,** 320 So.2d 792, 793 (Miss. 1975) (citations omitted). Even if Landry's and Scheib's individual periods of time spent adversely possessing the passageway were insufficient to meet the limitations requirement, we have applied the doctrine of tacking for landowners in privity to easements by prescription. *See* **Rutland v. Stewart,** 630 So. 2d 996, 999 (Miss. 1994). The statutory time period was met in each case.

## CONCLUSION

¶17. Finding that all of the elements necessary to establish an easement were proven convincingly at trial,

we affirm the judgment of the chancery court.

¶18. **AFFIRMED.**

**PITTMAN, C.J., BANKS AND McRAE, P.JJ., SMITH, MILLS, WALLER, COBB AND EASLEY, JJ., CONCUR.**