960 So.2d 501 (2006)
The ARRECHEA FAMILY TRUST, John F. Arrechea and Lois M. Arrechea, Co-Trustees, David M. Reed and Katherine A. Reed, Appellants
v.
John Palmer ADAMS, Appellee.
No. 2005-CA-01118-COA.
Court of Appeals of Mississippi.
October 24, 2006.
Rehearing Denied April 24, 2007.
*503 David A. Burns, attorney for appellants.
Thomas J. Suszek, Stephan L. McDavid, Jonathan Masters, Clarksdale, attorneys for appellee.
Before MYERS, P.J., BARNES and ISHEE, JJ.
MYERS, P.J., for the Court.
¶ 1. The Chancery Court of Lafayette County awarded John Palmer Adams a prescriptive easement across the property of the Arrechea Family Trust (Trust) for ingress and egress to the property he purchased from the Estate of Johnnie Jackson. The Trust, aggrieved by this judgment, appeals, raising several issues. We find no error in the judgment of the chancellor and affirm the lower court's grant of Adams' motion for summary judgment.

FACTS
¶ 2. This case commenced upon John Palmer Adams' filing of a petition for easement naming the Arrechea Family Trust and David and Katherine Reed (Trust) as parties. By way of a warranty deed executed on March 31, 2004, Adams acquired his landlocked property, the dominant estate, from the Estate of Johnnie Jackson, which Johnnie Jackson initially purchased on June 9, 1959. In his petition, Adams asserted that for at least thirty years Jackson continuously used for ingress and egress a fifteen foot wide easement, running north to south, over the servient property presently owned by the Trust. The current record title owner of the servient estate, the Trust, received the property by virtue of a quitclaim deed executed on October 5, 1996, and recorded shortly thereafter on October 18, 1996. Prior to the Trust's ownership of the property, John and Lois Arrechea owned the servient estate since January 5, 1992. Earlier record title ownership was held by Lambert and Dorothy Hill from October 17, 1973 until January 5, 1992. The record also reflects that both the dominant and servient parcels of land were carved and derived from the same tract of land, Original City of Oxford Lot Number 601.
¶ 3. Adams contends that while his predecessor, Jackson, held title to the dominant estate, he accessed the public street, University Avenue, by crossing the Trust's servient estate from 1959 until Jackson's death in 1999. Adams further contends that for more than three decades, Jackson traversed this property under claim of ownership, with actual possession, openly and notoriously, continuously and uninterrupted, which far exceeds the statutory requirement of ten years. Miss.Code Ann. § 15-1-13 (Rev.2003). However, the Trust contended that Jackson had used the easement by permission and consent of the Hills from 1973 and the Arrecheas since 1992.
¶ 4. The chancellor granted Adam's motion for summary judgment, finding that upon review of the pleadings, taken together with numerous affidavits, plats, photographs and other evidence, there existed no genuine issue of material fact disputing whether a prescriptive easement existed across the Trust real property to *504 the landlocked property of Adams. Jackson had fulfilled the ten year requirement for prescription from 1959 through 1969. Therefore, although the Trust presented evidence regarding consent to the use of the driveway in the years of 1973 and 1992, this consent was inconsequential to the easement already vested with Jackson prior to these years.
¶ 5. Finding that the lower court did not err, we affirm the grant of summary judgment and find that a prescriptive easement exists over the servient property of the Trust and Adams is entitled to a judgment as a matter of law.

STANDARD OF REVIEW
¶ 6. This Court's standard of review for a grant or denial of a motion for summary judgment is well-established:
Our appellate standard for reviewing the grant or denial of summary judgment is the same standard as that of the trial court under Rule 56(c) of the Mississippi Rules of Civil Procedure. This Court employs a de novo standard of review of a lower court's grant or denial of a summary judgment and examines all the evidentiary matters before it  admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied. Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite. In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. That is, the non-movant should be given the benefit of the doubt.
Heigle v. Heigle, 771 So.2d 341, 345 (Miss. 2000).

DISCUSSION
¶ 7. There exists three methods of creating easements: by prescription, by implication, or by grant. Simcox v. Hunt, 874 So.2d 1010, 1017(¶32) (Miss.Ct.App. 2004). An easement may be acquired by ten years possession, just as may a fee simple title. Rutland v. Stewart, 630 So.2d 996, 999 (Miss.1994). A prescriptive easement is created when there has been ten years of use that is (1) open, notorious, and visible; (2) hostile; (3) under a claim of ownership; (4) exclusive; (5) peaceful; and (6) continuous and uninterrupted. Myers v. Blair, 611 So.2d 969, 971 (Miss. 1992). Each of these aforementioned elements are discussed below. Consent for use of property from the record title owner will make the use permissive and not adverse, as required for a prescriptive easement. Id.
(1) Open, notorious and visible
¶ 8. Neither Adams nor his predecessor in title, Jackson, attempted to hide the use of the driveway as a means of ingress and egress to the property. Jackson used the easement from 1959 until his death in 1999, and most importantly between the years of 1959 and 1969 without consent from the record title owner. Several affidavits attested that the owners of the servient property, including the Arrecheas' predecessors in title, the Hills, were aware of Jackson's open and visible use of the drive. Additionally, an excerpt from the Minute Book of the City of Oxford confirms the city's recognition of the easement to both the Hills and Jackson for access to University Avenue, therefore establishing *505 that Jackson's use was notorious. The evidence shows that Jackson's use was sufficiently open, notorious and visible.
(2) Hostile
¶ 9. "[U]se by express or implied permission or license, no matter how long continued, cannot ripen into an easement by prescription since adverse [or hostile] use is lacking." Myers v. Blair, 611 So.2d 969, 971 (Miss.1992). The Trust claims that there is no proof that Adams' or Jackson's use of the driveway was adverse or hostile to the Trust's predecessor in title. Adams maintains that neither he nor his predecessor, Jackson, requested permission from the Trust or their predecessors in title. Case law mandates that Adams is not required to prove the negative: that his predecessor, Jackson, was not given permission to use the easement, but that the Trust was to prove that Jackson was given permission for use. Morris v. W.R. Fairchild Const. Co., 792 So.2d 282, 284(¶ 9)(Miss.Ct.App.2001). The Trust was unable to prove that consent was given to Jackson during the years between 1959 and 1969. No evidence was presented that demonstrated that Jackson or Adams made a request for permission to use the easement for ingress and egress to the property during the applicable periods of time for prescription. Hostility is further evinced by proof that an antiquated chain-link fence is positioned between the dominant and servient estates crossing the easement.
¶ 10. "Where . . . a use of the lands of another for roadway purposes has been open, visible, continuous, and unmolested since some point in time anterior to the memory of the aged inhabitants of the community, such use will be presumed to have originated adversely.'" McCain v. Turnage, 238 Miss. 44, 117 So.2d 454, 455 (1960). Reviewing the record, we find that the Trust offered no evidence which would rebut this presumption that the easement was created hostilely. The parties do not dispute any material fact concerning a request for permission for use of the property during the significant period of time, 1959 until 1969, when the possession ripened into title. Thus, because the Trust has not alleged that permission for use of the property was granted during the applicable time periods for prescription, the Trust cannot divest Adams' of title which had already ripened during the period of time necessary to create a prescriptive easement.
(3) Under claim of ownership
¶ 11. At trial, the evidence showed that Jackson had used the easement as his own by giving permission to others to use the easement in order to reach his home. This use by Jackson gave a reasonable inference to the community that the driveway was owned by him. The Trust presented no evidence to the contrary. Therefore, we find the evidence sufficient to support a claim of ownership.
(4) Exclusive
¶ 12. The evidence presented through testimony, survey plats, and other observations to the lower court concerning the use of the easement support the conclusion that the easement was used strictly by Adam's predecessor, Jackson, and presently by Adams as a driveway and not for public use. There is no other purpose for the easement than to enter and leave the property of Adams. Therefore, the evidence presented is sufficient to support a finding of exclusive use.
(5) Peaceful
¶ 13. The mere existence of a dispute over the use of land does not present *506 an obstacle to satisfy the element of peaceful use. Simple disputes often arise between neighboring landowners, but do not rise to the level of destroying the peaceful existence between them. Dieck v. Landry, 796 So.2d 1004, 1009 (¶ 15) (Miss. 2001). No evidence is presented establishing a non-peaceful existence between the Trust and Adams and their respective predecessors in title. Therefore, this element of prescription is satisfied.
(6) Continuous and uninterrupted use for ten years
¶ 14. The evidence clearly demonstrated that the easement had been in use for a ten year period. Jackson began to use the easement in 1959 when he purchased the property. This use continued well in excess of the statutorily proscribed time period. Although the record reflects that permission for use was granted in the years of 1973 and 1992, the prescriptive time period had already been satisfied and the easement had vested in 1969.

CONCLUSION
¶ 15. We agree that the lower court was correct in finding that a prescriptive easement existed prior to 1992 when the Arrecheas purchased the property now titled to the Trust. Adams presented adequate proof that the use of the easement was open, notorious and visible; hostile; under claim of ownership; exclusive; peaceful; and continuous and uninterrupted for ten years. Although Adams, himself, only owned the property for approximately one year before filing his petition, his use is tacked onto the use of his predecessor, Jackson. In reviewing this case in the light most favorable to the Trust, taking together admissions in pleadings, answers to interrogatories, depositions, affidavits, testimony presented at trial, etc., we find that no genuine issue of material fact exists. We, therefore, affirm the grant of summary judgment by the Chancery Court of Lafayette County in holding that a fifteen foot wide prescriptive easement exists over the Trust property for ingress and egress to the Adams property.
¶ 16. THE JUDGMENT OF THE CHANCERY COURT OF LAFAYETTE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
KING, C.J., LEE, P.J., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, AND ISHEE, JJ., CONCUR. ROBERTS, J., NOT PARTICIPATING.