FAIR, J.,
for the Court:
¶ 1. Riverview Development brought suit to contest Golding Development’s record title to a tract of land near the Mississippi River in Vicksburg. Riverview claimed the City of Vicksburg had adversely possessed the property and conveyed it to Riverview. After Riverview presented its case, the chancellor granted a Rule 41(b) dismissal,[1] finding that the City did not adversely possess the property, and even if it had, the disputed property was not conveyed by the deed to Riverview. The *574 chancellor confirmed title in Golding, and Riverview appeals. We affirm the decision of the chancellor.
FACTS
¶2. The disputed property consists of approximately 11 acres that have at various times been conveyed or leased as part of two larger tracts. In 1922, it was the eastern part of 27 acres that were leased for 50 years by the City of Vicksburg to the Inland and Coastwise Waterways Service, a federal agency. In 1926, the City sold 37 acres, including the subject property and 26 other acres further east, to the Yazoo & Mississippi Valley Railroad (Y & MVRR). The disputed property is the “overlap” of the 1922 lease and the 1926 conveyance, with the remainder of the lease tract generally lying to the east and the remainder of the sold property to the west. The 1926 deed specifically noted that the 11 acres were subject to the 1922 lease.
¶ 3. Confusion began in 1951, when the federal lease was terminated early. The City then executed a new lease that contained a metes and bounds description of the entire 27-acre tract of the original lease — that is, the instrument purported to also lease the 11 acres that the City had sold 25 years earlier in 1926. The lease was acquired by Anderson-Tully, which operated a sawmill and laminating plant, allegedly occupying the entire 27 acres, including the disputed property. To further complicate things, in 1975 Anderson-Tully received a deed to the eastern 37 acres (which also included the disputed property) from Y & MVRR’s successor in title. Anderson-Tully nonetheless continued to pay the full amount of the lease to the City, and in 1994 it exercised an option to renew the lease for another twenty-five years.
¶ 4. Also in 1994, Anderson-Tully assigned the lease and conveyed title to the 37 acres to American Gaming Company for an ill-fated casino development. The two tracts were separated again in 1996 when the 37 acres was foreclosed upon by a mortgagee. In 2003 the lease was terminated by the City for nonpayment. A year later, Riverview purchased land from the City of Vicksburg, with exactly what was conveyed being a disputed issue in this lawsuit. Both parties agree Riverview acquired title to the part of the 1922 lease that had remained continuously in the City’s record ownership.[2] Riverview contended that the conveyance also included the disputed 11 acres, which the City had reacquired by adverse possession through the occupation of Anderson-Tully under the City’s lease.[3] Golding subsequently acquired record title to the disputed property from a successor-in-interest to the mortgagee, ánd this dispute arose between Riverview and Golding.
STANDARD OF REVIEW
¶ 5. Rule 41(b) provides for involuntary dismissals after the presentation of the plaintiffs case in actions tried to the court. “A judge should grant a motion for involuntary dismissal if, after viewing the evidence fairly, rather than in the light most favorable to the plaintiff, the judge would find for the defendant.” Gulfport-Biloxi Reg’l. Airport Auth. v. Montclair Travel Agency, Inc., 937 So.2d 1000, 1004 (¶ 13) (Miss.Ct.App.2006). On the other hand, “[t]he court must deny a motion to *575 dismiss only if the judge would be obliged to find for the plaintiff if the plaintiffs evidence were all the evidence offered in the case.” Id. at 1004-05 (¶ 13) (citation omitted). Rule 41(b) involuntary dismissals are reviewed under the deferential substantial-evidence/manifest-error standard, since the court’s decision is not only as arbiter of the law but as the finder of fact. See id. at 1005 (¶ 13).
DISCUSSION
¶ 6. The parties devote much of their briefs to two rather novel questions regarding the mechanics of adverse possession — whether and under what circumstances the City could adversely possess the property: (1) through the occupation of its tenant and (2) after previously conveying it away. Having studied the record and controlling law, we believe Riverview has put the cart before the horse in advancing these issues without directly challenging the chancellor’s finding that the City did not convey the subject property to Riverview. Because Riverview’s claim is that the City — and not Riverview itself— adversely possessed the property, this case is controlled by Grice v. Brewer, 302 So.2d 511 (Miss.1974). Consequently, we limit our discussion to those issues raised on appeal that are necessary to resolve the case.
¶ 7. In Grice, the Mississippi Supreme Court considered a case in which the proof showed that a claimant’s predecessor in title — and not the claimant himself — had adversely possessed a strip of land adjoining the property identified in his deed. Id. at 512. The boundaries set out in the deed excluded the disputed strip. Id. The supreme court concluded that the record title remained paramount. Id.
¶ 8. It is important to note that neither Grice nor today’s case involve tacking, which allows a party claiming adverse possession to connect his occupation with predecessors in privity of possession. Rutland v. Stewart, 630 So.2d 996, 998 (Miss.1994). Privity of possession can be through “any conveyance, agreement, or understanding[ ] that has for its object the transfer of possession and is accompanied by a transfer in fact.” Walters v. Rogers, 222 Miss. 182, 186, 75 So.2d 461, 462 (1954). However, the claimant’s possession must be continuous with the predecessor for tacking to give rise to a claim of adverse possession in the claimant. See 2 C.J.S. Adverse Possession § 164 (2003). There was little, if any, evidence that the City was in possession of the disputed property at the time of the conveyance to Riverview, nor did Riverview take possession of the disputed area immediately after the conveyance.[4] Riverview simply did not attempt to prove tacking at trial, nor has it been argued on appeal.
¶ 9. Instead, Riverview’s claim is that the City adversely possessed the property at some point in the distant past and transferred it by deed to Riverview. The flaw in this argument is that Riverview— like the plaintiff in Grice — does not have a deed transferring ownership from the City. Instead, the deed from the City expressly identifies the eastern boundary of the property conveyed as the disputed property — i.e., the disputed property is specifically excluded from the conveyance to Riverview. The deed does contain more general language that could be construed to include the disputed property, but the chancellor found the specific language controlling over the general. See Carrere v. *576 Johnson, 149 Miss. 105, 110, 115 So. 196, 197 (1928).[5]
¶ 10. On appeal Riverview has not challenged this finding by the chancellor as to what was conveyed by the City. It simply asserts to the contrary in its brief, without substantial arguments or supporting authority. Riverview also contends that the chancellor could have reformed the deed, which was requested of the lower court; but again the chancellor’s refusal to do so has not been raised as an issue on appeal.
¶ 11. Grice requires a party asserting adverse possession by its predecessor to show that title to the adversely possessed property was actually conveyed by the predecessor. The chancellor found otherwise in the present case, and Riverview has not challenged the relevant findings on appeal. Consequently we must affirm the chancellor’s decision to cancel Riverview’s claim to the disputed property.
¶ 12. Remaining at issue is River-view’s contention that the chancellor erred in finding that Golding held record title to the disputed property, because Golding’s deraignment of title was never entered into evidence during the trial. This record title formed the basis of the chancellor’s decision to quiet title in Golding. “It is an elementary proposition of law that in a cloud suit the complainant has the burden of proving his title and may not rely on the weakness of [his] adversary’s title.” Culbertson v. Dixie Oil Co., 467 So.2d 952, 954-55 (Miss.1985).
¶ 13. It is true that the supporting deeds were not entered into evidence during the trial, but they were submitted with Golding’s pleadings and are public records. Given that the deeds were duly recorded, we find no abuse of discretion in the trial court taking judicial notice of their existence under Rule 201(b) of the Mississippi Rules of Evidence. Under Rule 201, “[a] court may look to any source it deems helpful and appropriate, including official public documents, records and publications.” Enroth v. Mem’l. Hosp. at Gulfport, 566 So.2d 202, 205 (Miss.1990).
? 14. Finally, Riverview contends that the trial court erred in denying a post-trial motion to “establish the correct lines on the ground so as to end the controversy among these adjacent landowners.” Riverview points to lay testimony taking issue with the surveys entered into evidence during the trial. We note that this relief v/as not sought by Riverview in its complaint, nor was any serious effort made during the trial to contest the reliability of the surveys. On appeal, River-view has simply failed to present compelling authority that the chancellor can be held in error for denying this belated request for additional relief. There is “a presumption that the judgment of the trial court is correct, and the burden is on the appellant to demonstrate some reversible error to the appellate court.” Cobb v. Cobb, 29 So.3d 145, 152 (¶24) (Miss.Ct.App.2010). We find that no reversible error has been shown on this point.
¶ 15. THE JUDGMENT OF THE CHANCERY COURT OF WARREN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, *577 CARLTON AND MAXWELL, JJ„ CONCUR. JAMES, J., NOT PARTICIPATING.

. M.R.C.P. 41(b).

. By 2004, only about ten acres of the undisputed area remained above the bank of the Mississippi River.

. In its original complaint, Riverview asserted that it was the record owner of the disputed 11 acres. It eventually changed its theory to adverse possession.

. An argument could also be made that the general language is tantamount to a “Mother Hubbard” clause, as contemplated in Grice; but such clauses are effective only for “small areas omitted by inadvertence,” not large parcels. See Grice, 302 So.2d at 512; see also Whitehead v. Johnston, 461 So.2d 240, 242 (Ala.1985).

. There was some proof that Riverview entered the disputed property later, but the break in continuity is fatal to a tacking claim.